(No. 48927.–

KIKUKO FUJIMURA, Appellee, v. CHICAGO TRANSIT
AUTHORITY *et al.,* Appellants.

*Opinion filed September 20, 1977.*

Norman J. Barry, Joseph P. Della Maria, Jr., and Michael J. Wall, of Chicago (Rothschild, Barry & Myers, Sal M. Bianchi and Michael G. Artery, of counsel), for appellant Chicago Transit Authority.

Joseph J. Butler, Jr., and Michael H. Postilion, of Chicago (Michael H. Postilion, Ltd., and Asher, Greenfield, Goodstein, Pavalon & Segall, Ltd., of counsel), for appellees.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Each of the plaintiffs in the seven personal injury cases consolidated in this appeal filed suit in the circuit court of Cook County against the Chicago Transit Authority (CTA), a municipal corporation, and other parties not relevant to this appeal. The CTA moved to dismiss the complaints as to it for failure to comply with the six-month-notice and one-year statute-of-limitations provisions of section 41 of the Metropolitan Transit Authority Act (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 341). The circuit court ruled that this statute was unconstitutional, denied the defendant's motion to dismiss, and found that its order involved an identified question of law as to which there is substantial ground for a difference of opinion and that immediate appeal might materially advance the

ultimate termination of the litigation, thus permitting the CTA to seek leave to appeal pursuant to our Rule 308(a) (58 Ill. 2d R. 308(a)). The appellate court allowed the motion for the interlocutory appeal, and we allowed a motion to take that appeal to this court under our Rule 302(a) and (b) (58 Ill. 2d R. 302(a), (b)).

The CTA was created pursuant to the earlier cited Metropolitan Transit Authority Act and operates under it so far as here relevant. Section 41 of that act provides:

"No civil action shall be commenced in any court against the Authority by any person for any injury to his person unless it is commenced within one year from the date that the injury was received or the cause of action accrued. Within six (6) months from the date that such an injury was received or such cause of action accrued, any person who is about to commence any civil action in any court against the Authority for damages on account of any injury to his person shall file in the office of the secretary of the Board and also in the office of the General Attorney for the Authority either by himself, his agent, or attorney, a statement, in writing, signed by himself, his agent, or attorney, giving the name of the person to whom the cause of action has accrued, the name and residence of the person injured, the date and about the hour of the accident, the place or location where the accident occurred and the name and address of the attending physician, if any. If the notice provided for by this section is not filed as provided, any such civil action commenced against the Authority shall be dismissed and the person to whom any such cause of action accrued for any personal injury shall be forever barred from further suing." (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 341.)

All of these suits were filed more than six months after the date of alleged injury, and none of the plaintiffs complied with both the six-month-notice and one-year-filing requirements. Notice and filing provisions as to other local governmental entities, generally, are contained in the Local Governmental and Governmental Employees Tort Immu-

nity Act (hereinafter referred to as the Tort Immunity Act) (Ill. Rev. Stat. 1973, ch. 85, pars. 8—101, 8—102). Section 8—101 of that act provides:

"No civil action may be commenced in any court against a local entity for any injury unless it is commenced within 2 years from the date that the injury was received or the cause of action accrued."

Section 8—102 provides:

"Within 1 year from the date that the injury or cause of action, referred to in Sections 8—101, 8—102 and 8—103, was received or accrued, any person who is about to commence any civil action for damages on account of such injury against a local public entity, or against any of its employees whose act or omission committed while acting in the scope of his employment as such employee caused the injury, must serve, either by personal service or by registered or certified mail, return receipt requested, a written notice on the Secretary or Clerk, as the case may be, for the entity against whom or against whose employee the action is contemplated a written statement, signed by himself, his agent or attorney, giving in substance the following information: the name of the person to whom the cause of action has accrued, the name and residence of the person injured, the date and about the hour of the accident, the place or location where the accident occurred, the general nature of the accident, the name and address of the attending physician, if any, and the name and address of the treating hospital or hospitals, if any."

It is the differences between the six months' and one-year notice requirements applicable to the CTA and the one-year and two-year requirements applicable to local governmental units generally which prompt plaintiffs to urge the invalidity, on equal protection grounds, of the shorter CTA provisions. They argue, and the trial court held, that there exists no rational basis for, and no legitimate State interest justifying, the discriminatory effect of the six-month-notice and one-year-filing requirements contained in section 41.

We would note, preliminarily, that prior to 1973 these differences did not exist. Until then the Tort Immunity Act required notice within six months and filing within one year. (Ill. Rev. Stat. 1971, ch. 85, pars. 8—101, 8—102.) It is not contended, nor could it be, that there is any inherent impropriety in a six-month-notice or one-year-filing provision. (*Fanio v. John W. Breslin Co.* (1972), 51 Ill. 2d 366, 368; *King v. Johnson* (1970), 47 Ill. 2d 247, 250-51; *Schuman v. Chicago Transit Authority* (1950), 407 Ill. 313, 316-19.) The alleged invalidity results from a 1973 amendment to the Tort Immunity Act which extended to one year the time within which notice of injury might be given, and to two years the time within which suit might be filed. That amendment did not alter the specific exclusion of the CTA from the operation of the Act (Ill. Rev. Stat. 1973, ch. 85, par. 2—101(b)). If the effect of the amendment is to create an irrational, invalid classification, it would seem to be the amendment which was and is invalid rather than section 41.

The defendant argues that the constitutionality of the Metropolitan Transit Authority Act in general (*People v. Chicago Transit Authority* (1945), 392 Ill. 77), and section 41 in particular (*Schuman v. Chicago Transit Authority* (1950), 407 Ill. 313), have been sustained against equal protection attacks. In *Schuman's* discussion of the argument that no rational basis existed for requiring notice of injury within six months and filing of suit within one year in the case of a public carrier when no such requirements existed for one injured by a private carrier, it was said:

"We are aware, and take judicial notice, of the magnitude of the operations of defendant. A transportation system of its size, operating, as it does, on the busy streets and thoroughfares of the second largest city in the United States, one of the largest cities of the world, becomes involved in the largest volume of personal injuries litigation

in the State. There are, no doubt, many, if not more, 'blind' claims—those not reported to the Authority by its employees—than in any other municipality in Illinois. The Authority is a municipal corporation, not entitled to make a profit, placing it in a different class from private carriers operating in the same area, and is surely entitled, as is a city, town or village, to an opportunity to protect itself by prompt investigation. The requirement of six months' notice affords the Authority this opportunity just as the requirement of notice to cities, towns and villages protects them. To conduct a complete investigation of every accident, whether large or small, would impose an intolerable burden upon defendant. An adequate investigation of a 'blind' accident, if the first notice of it came one year or two years later upon instituting an action, would, in most instances, be impracticable, if not impossible. As observed in *People v. Chicago Transit Authority*, 392 Ill. 77, 'That there is a substantial difference between the situation of passengers in the area here involved and those in the balance of the State, is readily seen.' The quoted observation is singularly appropriate here." (407 Ill. 313, 320-21.)

Defendant urges that we hold this rationale dispositive of this case. While we agree that *Schuman* is relevant, there are differences between the parties, issue, and arguments there and those here sufficient to warrant a complete, rather than summary, review. Similarly, defendant submits that the six-month-notice requirement has been enforced by this court subsequent to the 1973 amendments. (*Repaskey v. Chicago Transit Authority* (1975), 60 Ill. 2d 185.) Plaintiffs respond that a pre-1973 injury was there involved and the differing periods were not applicable, a

conclusion which may be incorrect. (See *Siltman v. City of Jacksonville* (1977), 44 Ill. App. 3d 874.) However, the argument presented in this case has not heretofore been considered by us, and, accordingly, our prior decisions are not decisive. *Schuman v. Chicago Transit Authority* (1950), 407 Ill. 313.

Traditional equal protection analysis, applicable in this case, requires us to determine whether the classification of defendants bears a rational relationship to a legitimate State purpose. (*S. Bloom, Inc. v. Mahin* (1975), 61 Ill. 2d 70, 76.) "A statute classifying persons or objects is not unconstitutional because it affects one class and not another, provided that it affects all members of the same class alike and provided that the classification is not arbitrary, but based upon some substantial difference in circumstances properly related to the classification." (*Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 175.) Plaintiffs concede that the legislature may properly distinguish between public and private tortfeasors. The question for us is whether there is a rational basis supporting the shorter notice period and statute of limitations applicable to the CTA as distinguished from other public entities, a distinction plaintiffs contend cannot be rationally justified under *Cleary v. Catholic Diocese* (1974), 57 Ill. 2d 384, 387, *Haymes v. Catholic Bishop* (1968), 41 Ill. 2d 336, 344, *Lorton v. Brown County Community Unit School District No. 1* (1966), 35 Ill. 2d 362, 365, and *Harvey v. Clyde Park District* (1964), 32 Ill. 2d 60, 66-67. Plaintiffs have overlooked, however, a fundamental difference between those cases and the one before us.

This court did strike down park district immunity in *Harvey v. Clyde Park District* (1964), 32 Ill. 2d 60, because that immunity did not include other governmental units. But the essence of the opinion was that the activities in question, maintenance of recreational facilities, were

common to various other governmental units while conditions and limitations upon liability were not. Indeed, the court stated: "From this decision it does not follow that no valid classifications for purposes of municipal tort liability are possible. On the contrary it is feasible, and it may be thought desirable, to classify in terms of types of municipal function, instead of classifying among different governmental agencies that perform the same function." (32 Ill. 2d 60, 67.) Consequently, in *Maloney v. Elmhurst Park District* (1970), 47 Ill. 2d 367, the court refused to invalidate a liability-limiting classification predicated upon use of the involved property for recreational purposes, holding that such a classification was neither arbitrary, capricious nor unreasonable.

Classification of governmental entities based upon their functions and activities is clearly proper. The CTA was established to operate and maintain a mass transportation system in the Chicago metropolitan area. That is its sole function. The observations in *Schuman* concerning the magnitude of the defendant's operations, the extent of its personal injury litigation, the problem of blind cases, and the substantial burden of investigating completely even apparently minor accidents are still pertinent. In our judgment, a public entity having as its only purpose the operation of one of the largest mass transit systems in the United States performs a unique governmental function with its own peculiar problems having no parallel in the usual functions of other local governmental entities. There is an additional and substantial distinction in the differing standards by which the liability of the CTA and other public entities is to be measured. The CTA as a public carrier owes those whom it serves the highest degree of care (*Katamay v. Chicago Transit Authority* (1972), 53 Ill. 2d 27), in contrast to the varying, but consistently lower, standards applicable to other public entities. This consideration appears to have been recognized as a factor for the

specific exclusion of the CTA from the Tort Immunity Act (Ill. Rev. Stat. 1973, ch. 85, par. 2—101(b)):

"[W]e agree that the legislation must apply generally to all local governments with immunities granted on the basis of rational, functional differences, not on the basis of the particular local-governmental unit involved. However, we urge that the Chicago Transit Authority be excluded from coverage by this legislation in that its activities as a public carrier and the duty of public carriers under existing law differs in many respects from those of the public entities proposed to be covered. The provisions of the proposed statute could precipitate a great deal of confusion in the area of the liability of the Chicago Transit Authority, and because of their function as a public carrier there is a rational basis for excluding them from the statute." Minority Report to Preliminary Report of the Joint Bar Association Committee on Tort Liability of Local Government 2 (April 1, 1965).

Classifications of governmental entities based upon their functions and activities are frequently made, and the CTA function is not the only one treated differently from others. The Tort Immunity Act provides for limited liability for police activities (Ill. Rev. Stat. 1973, ch. 85, par. 4—101 *et seq.*) and fire protection (par. 5—101 *et seq.*). (See also *Stubblefield v. City of Chicago* (1971), 48 Ill. 2d 267.) Sections 1—4—5 and 1—4—6 of the Illinois Municipal Code impose absolute liability on a municipality for injuries suffered by a person obeying a policeman's command to assist in arresting or securing an offender. (Ill. Rev. Stat. 1973, ch. 24, pars. 1—4—5, 1—4—6; *Meador v. City of Salem* (1972), 51 Ill. 2d 572.) There are no similar statutes imposing liability for injuries incurred while assisting other public employees. The provisions of the Tort Immunity Act do not apply equally to all public entities. This court has recently held that the immunity-waiver provision of section 9—103(b) of the Tort Immunity Act is inapplicable to the immunity created by sections 24—24 and 34—84a of the School Code (Ill. Rev. Stat.

1967, ch. 122, pars. 24—24, 34—84a). (*Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 175.) It has also held that it is neither arbitrary nor unreasonable to classify government entities, for purposes of their immunity, according to whether they are insured (*Sullivan v. Midlothian Park District* (1972), 51 Ill. 2d 274, 281), and separate classifications for the torts of State and local government units have been held to rest on a rational basis. *Seifert v. Standard Paving Co.* (1976), 64 Ill. 2d 109, 117.

Actions brought against the CTA to which section 41 is applicable are not the only actions against a public entity to which a notice requirement or limitations period differing from those in the Tort Immunity Act applies. Suits for damages for the wrongful removal, destruction, or vacation of a building under section 1—4—7 of the Illinois Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 1—4—7) require no notice. (*Hecko v. City of Chicago* (1975), 25 Ill. App. 3d 572, 578.) The Workmen's Compensation Act requires a 45-day notice and contains varying statutes of limitation (Ill. Rev. Stat. 1973, ch. 48, par. 138.6(c)), while the Workmen's Occupational Diseases Act requires notice as soon as practicable and provides differing limitations (Ill. Rev. Stat. 1973, ch. 48, par. 172.41(c)). Finally, actions against several regional port districts require six months' notice and must be filed within one year. (Ill. Rev. Stat. 1973, ch. 19, pars. 545, 634, 784, 844. But see Ill. Rev. Stat. 1973, ch. 85, par. 10—101.) It is entirely clear that the legislature has not singled out the CTA for preferential treatment over all other local governmental entities. Several other States also permit differing periods to be employed with respect to different public entities. See *McCann v. City of Lake Wales* (Fla. 1962), 144 So. 2d 505; *Busha v. Department of State Highways* (1974), 51 Mich. App. 397, 215 N.W.2d 567 (statutes of limitations); contra *Reich v. State Highway Department* (1972), 386 Mich. 617, 194 N.W.2d 700

(notice); *O'Connor v. Long Island R.R.* (Sup. Ct. Queens County 1977), 89 Misc. 2d 225, 391 N.Y.S.2d 346 (mem.); *Harris County v. Dowlearn* (Tex. Civ. App. 1972), 489 S.W.2d 140, 146; *Crowder v. Salt Lake County* (Utah 1976), 552 P.2d 646.

While the CTA may for some purposes be in a class with other public entities, its unique function and activities distinguish it from others for the purpose with which we are concerned. The conclusion, in our judgment, is inescapable that a rational basis exists for distinguishing the CTA from other public entities for purposes of providing shorter limitations periods. Consequently, no violation of equal protection requirements has occurred.

Finally, we observe that acceptance of plaintiffs' argument that there is no rational basis for distinguishing the CTA from other local governmental entities would necessarily imply the invalidity of section 2—101(b) of the Tort Immunity Act, which expressly exempts from coverage entities organized under the Metropolitan Transit Authority Act. The CTA has been treated as a distinct entity with unique problems since its creation over 30 years ago, and we remain unpersuaded that this classification is arbitrary or irrational.

Accordingly the judgment of the circuit court of Cook County is reversed and the causes remanded for further proceedings consistent herewith.

*Reversed and remanded.*