ELLEN GEORGE, Plaintiff-Appellee, *v.* THE CHICAGO TRANSIT AUTHORITY, Defendant-Appellant.

First District (3rd Division)    No. 77-29

Opinion filed January 11, 1978.—Modified on denial of rehearing April 19, 1978.

Norman J. Barry and Roger J. Guerin, both of Chicago (Rothschild, Barry & Meyers, of counsel), for appellant.

Robert F. Lisco, of Chicago (Sidney Z. Karasik, of counsel), for appellee.

Mr. JUSTICE SIMON delivered the opinion of the court:

The plaintiff, Ellen George, sued to recover both compensatory and punitive damages for injuries she suffered as a passenger in a train

operated by the defendant, Chicago Transit Authority (CTA), which collided with another train. The CTA has acknowledged the plaintiff's right to recover compensatory damages but contests her right to recover punitive damages. The circuit court denied the CTA's motion to strike the count of the complaint seeking punitive damages, and this court allowed the CTA's application for leave to appeal from that interlocutory order. At issue is whether the CTA is liable for or exempt from punitive damages.

■■ The CTA is established by statute as a municipal corporation. (Ill. Rev. Stat. 1975, ch. 111 2/3, par. 303.) In the absence of a statute specifically authorizing such recovery, municipal corporations are not liable for punitive damages. (*City of Chicago v. Langlass* (1869), 52 Ill. 256, 259; *City of Chicago v. Martin* (1868), 49 Ill. 241; *Chappell v. City of Springfield* (Mo. 1968), 423 S.W.2d 810, and cases cited at 813; *Ranells v. City of Cleveland* (1975), 41 Ohio St. 2d 1, 321 N.E.2d 885.) No reported decision in Illinois has deviated from this general rule. See Illinois cases in Annot., 19 A.L.R.2d 903, 914 (1951).

■■ The direction the law has followed on this subject is explained by the nature of punitive damages and the characteristics of municipal corporations. The purpose of punitive damages is to punish the defendant, to teach him not to repeat his intentional, deliberate and outrageous conduct, and to deter others from similar conduct. (*Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, 35, 330 N.E.2d 509; Prosser on Torts 9 (4th ed. 1971).) The Illinois legislature has labeled all CTA funds as "public property devoted to an essential public and governmental function and purpose * * *." (Ill. Rev. Stat. 1975, ch. 111 2/3, par. 333.) The burden of punitive damages assessed against a governmental entity would be borne by its taxpayers—in the case of the CTA, by taxpayers and fare-paying passengers. There is no justification for punishing taxpayers or attempting to deter them from future misconduct committed by CTA employees over whom they would have no control. In this case, no societal interest or public policy would be served by awarding punitive damages against the CTA. To authorize the levy of punitive damages against a public entity "would impose an unjust burden upon the innocent taxpayer without directly punishing the wrongdoer. The punitive purpose would thus be frustrated." (*City of Salinas v. Souza & McCue Construction Co.* (1967), 66 Cal. 2d 217, 57 Cal. Rptr. 337, 424 P.2d 921, 926.) Thus, under the common law of Illinois, which is adhered to in many other states, the CTA is not subject to punitive damages.

While she recognizes the long line of authority supporting the denial of punitive damages against a municipal corporation, the plaintiff argues that this authority applies only to municipalities performing a

governmental function, and not to those performing a "proprietary" function. She argues that although the CTA is a "municipal corporation," it is also a common carrier engaged in a purely proprietary function, and that its operating revenues come in the form of subsidies from taxpayers.

Regardless of how the CTA's function is characterized, the continued operation of the CTA is a service essential to the smooth functioning of the Chicago metropolitan area. Public funds are committed to the CTA to subsidize its losses and to enable the mass transportation system of this metropolitan area to continue to serve the public. Thus, the award of punitive damages in this case would punish those against whom punitive damages traditionally have not been awarded—taxpayers and the general public.

The plaintiff next relies on *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, 163 N.E.2d 89, claiming that the holding in that case eliminated tort immunity for governmental entities, thereby abolishing immunity from claims for punitive damages as well as for compensatory damages.

*Molitor* eradicated the doctrine of governmental immunity which protected various branches of municipal government against claims for compensatory damages for injuries caused by torts of their officials and employees. The governmental function immunity which *Molitor* dealt with was a judicially created immunity first applied to towns and counties in Illinois in *Town of Waltham v. Kemper* (1870), 55 Ill. 346, and later extended to other governmental entities, such as school districts, by *Kinnare v. City of Chicago* (1898), 171 Ill. 332, 49 N.E. 536. It was this total freedom from liability in the performance of a governmental function which *Molitor* abolished. However, total immunity from liability for any damages inflicted in the performance of a governmental function is not the issue in this case; by its enabling legislation, the CTA always has been required to respond in compensatory damages for its negligent conduct. (Ill. Rev. Stat. 1975, ch. 111 2/3, par. 341.) Thus, *Molitor* abolished an immunity which the CTA never had.

In addition, the rule exempting municipal corporations from payment of punitive damages is supported by a different rationale than the doctrine of total immunity from liability considered in *Molitor*. The immunity abolished by *Molitor* derived from the concept of sovereign immunity based upon the ancient maxim, "The King can do no wrong." Granting immunity from punitive damages, on the other hand, is based on the lack of utility of punishing taxpayers who are guilty of no wrongdoing and in no position to exert direct control to prevent future misconduct. For this additional reason *Molitor* is not relevant to the issue presented by this appeal.

The Local Governmental and Governmental Employees Tort

Immunity Act, commonly known as the Tort Immunity Act, expressly exempts local public entities from liability for punitive damages. (Ill. Rev. Stat. 1975, ch. 85, par. 2—102.) The Act, however, does not apply to the CTA. (Ill. Rev. Stat. 1975, ch. 85, par. 2—101(b).) The plaintiff therefore contends that because the CTA lacks such statutory protection, it is subject to punitive damages.

The portion of the Tort Immunity Act exempting public entities covered by the Act from punitive damages is merely a reiteration and codification of a long-established principle. There is no suggestion in the Tort Immunity Act that because the Act is not applicable to the CTA, the legislature intended to make the CTA responsible for punitive damages, or to withdraw the protection of the long-established principle that governmental entities are not subject to punitive damages from the CTA. In effect, then, the plaintiff is asking this court to convert the legislature's denial of authority to impose damages on other municipal corporations into a grant of authority to impose punitive damages upon a single municipal corporation—the CTA. We decline to do this. Contrary to the plaintiff's suggestion, the CTA was not excluded from the Tort Immunity Act because of a legislative intent to single out the CTA as the only municipal corporation against which punitive damages might be imposed. Rather, the Tort Immunity Act was made inapplicable to the CTA because, as a common carrier, it is subject to a "highest degree of care" standard, while other public entities not operating as common carriers are held to lower standards of care. This distinction was recognized by the Illinois Supreme Court in *Fujimura v. Chicago Transit Authority* (1977), 67 Ill. 2d 506, 368 N.E.2d 105, where the court referred to the different standards of care and stated:

> "This consideration appears to have been recognized as a factor for the specific exclusion of the CTA from the Tort Immunity Act [Citation]." (*Fujimura*, 67 Ill. 2d 506, 513-14.)

The court then quoted from the Minority Report of the Joint Bar Association Committee on Tort Liability of Local Government, which noted that, based upon the different duty of public carriers, a great deal of confusion could arise if the CTA were not excluded from the Tort Immunity Act. See *Fujimura*, at 513-14..

An analysis of other statutes and their interpretation by Illinois courts buttresses the conclusion that the CTA is protected by common-law principles against punitive damages even without a statute which explicitly provides such an exemption. The legislature has specifically stated that in addition to actual damages, "damages for the sake of example and by way of punishment" may be awarded against public utilities (Ill. Rev. Stat. 1975, ch. 111 2/3, par. 77) as defined in the Illinois Commerce Commission Act. (Ill. Rev. Stat. 1975, ch. 111 2/3, par. 1 *et*

*seq.*) But in defining public utility, the Commerce Commission Act excludes those utilities owned and operated by any political subdivision or municipal corporation. (Ill. Rev. Stat. 1975, ch. 111 2/3, par. 10.3.) Thus, the right to recover punitive damages provided by the Commerce Commission Act against a public utility is not applicable to the CTA. See *Fallon v. Illinois Commerce Com.* (1948), 402 Ill. 516, 521-23, 84 N.E.2d 641.

Also, the Metropolitan Transit Authority Act, which created the CTA, refers to actions against the CTA for damages for personal injury, using the language, "\* \* \* civil action \* \* \* by any person for any injury to his person \* \* \*." The Metropolitan Transit Authority Act does not contain even an implied expression of legislative intent to subject the CTA to punitive damages.

Thus, even in the absence of a statute which expressly exempts the CTA from punitive damages, it is the conclusion of this court that: (1) Common-law principles exempt a municipal corporation from the award of punitive damages against it; (2) This exemption was not eradicated by *Molitor*; (3) Every consideration of public policy which supports the immunity of municipal corporations from punitive damages, even in the absence of a statute so providing, is applicable to the CTA; and (4) The provision of the Tort Immunity Act precluding recovery of punitive damages was a codification of existing law, and did not impose liability for punitive damages on the CTA merely because the Act declares itself inapplicable to the CTA. Consequently, the circuit court's order denying the CTA's motion to strike the count of the complaint praying for punitive damages is reversed.

Order reversed.

JIGANTI, P. J., and McNAMARA, J., concur.