# Illinois Official Reports

## Appellate Court

*Madison v. City of Chicago*, 2017 IL App (1st) 160195

| | |
|---|---|
| Appellate Court Caption | MARY MADISON, Plaintiff-Appellant, v. THE CITY OF CHICAGO, Defendant-Appellee. |
| District & No. | First District, First Division<br>Docket No. 1-16-0195 |
| Filed | June 26, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-L-7725; the Hon. John P. Callahan, Jr., Judge, presiding. |
| Judgment | Affirmed in part and reversed in part. |
| Counsel on Appeal | Jordan T. Hoffman, of Chicago, for appellant.<br><br>Edward N. Siskel, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Julian N. Henriques, Jr., Assistant Corporation Counsel, of counsel), for appellee. |
| Panel | JUSTICE MIKVA delivered the judgment of the court, with opinion.<br>Presiding Justice Connors and Justice Simon concurred in the judgment and opinion. |

**OPINION**

¶ 1    We are asked in this appeal to consider whether the one-year limitations period in the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act or Act) (745 ILCS 10/1-101 *et seq.* (West 2010)) bars the plaintiff's claim for wrongful demolition. We hold that it does not and reverse the trial court's dismissal of that claim on statute of limitations grounds. We affirm the dismissal of plaintiff's other claims.

¶ 2                                                  BACKGROUND

¶ 3    The complaint in this case alleged that, on July 29, 2010, the City of Chicago (City) wrongfully demolished a building in which plaintiff Mary Madison had a beneficial interest. Ms. Madison filed her lawsuit against the City five years later, on July 29, 2015, and alleged four counts: count I for wrongful demolition under section 1-4-7 of the Illinois Municipal Code (65 ILCS 5/1-4-7 West 2010)) and counts II through IV, respectively, for an unlawful taking or inverse condemnation, negligence, and conversion.

¶ 4    The City moved to dismiss Ms. Madison's complaint, arguing that each of her claims was barred by the one-year limitations period in the Tort Immunity Act (745 ILCS 10/8-101(a) (West 2010)). Ms. Madison responded that section 2-101(e) of the Act (745 ILCS 10/2-101(e) (West 2010)) exempted her demolition claim from the Act's provisions and that her other claims were timely because they were derivative of her wrongful demolition claim. Ms. Madison argued that the applicable limitations period was therefore the five-year period set forth in section 13-205 of the Code of Civil Procedure (Code) (735 ILCS 5/13-205 (West 2010)).

¶ 5    On December 16, 2015, the trial court granted the City's motion. Ms. Madison timely filed her notice of appeal on January 15, 2016. This court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303, which govern appeals from final judgments entered by the circuit court in civil cases. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); 303 (eff. Jan. 1, 2015).

¶ 6                                                  ANALYSIS

¶ 7    The issue before us is whether to apply the general five-year limitations period "to recover damages for an injury done to property *** and all actions not otherwise provided for" (735 ILCS 5/13-205 (West 2010)) or the one-year limitations period in the Tort Immunity Act (745 ILCS 10/8-101(a) (West 2010)). Ms. Madison argues that her claim for wrongful demolition is exempted from the Act's statute of limitations by section 2-101(e) of the Act.

¶ 8    Section 2-101 provides:

> "Nothing in this Act affects the right to obtain relief other than damages against a local public entity or public employee. Nothing in this Act affects the liability, if any, of a local public entity or public employee, based on:
>
> a). Contract;
>
> b). Operation as a common carrier; and this Act does not apply to any entity organized under or subject to the 'Metropolitan Transit Authority Act' [(70 ILCS 3605/1 *et seq.* (West 2010))], approved April 12, 1945, as amended;
>
> c). The 'Workers' Compensation Act' [(820 ILCS 305/1 *et seq.* (West 2010))], approved July 9, 1951, as heretofore or hereafter amended;

d). The 'Workers' Occupational Diseases Act' [(820 ILCS 310/1 *et seq.* (West 2010))], approved July 9, 1951, as heretofore or hereafter amended;

e). Section 1-4-7 of the 'Illinois Municipal Code', approved May 29, 1961, as heretofore or hereafter amended.

f). The 'Illinois Uniform Conviction Information Act' [(20 ILCS 2635/1 *et seq.* (West 2010))], enacted by the 85th General Assembly, as heretofore or hereafter amended." 745 ILCS 10/2-101 (West 2010).

¶ 9 Referenced in subsection (e), section 1-4-7 of the Illinois Municipal Code provides liability for injury caused by wrongful demolition. 65 ILCS 5/1-4-7 (West 2010). The trial court here rejected Ms. Madison's argument that, under subsection (e), her claim for wrongful demolition was exempt from the shorter limitations period of the Tort Immunity Act. The trial court relied on our decision in *Hapeniewski v. City of Chicago Heights*, 147 Ill. App. 3d 528, 531 (1985) (*Hapeniewski I*), *vacated*, 484 U.S. 806 (1987), in which we held that demolition claims were subject to the Tort Immunity Act limitations period, despite the language in 2-101(e). We begin, as the trial court did, with our decision in *Hapeniewski* and trace the law on this issue as it has developed since then.

¶ 10 In *Hapeniewski I*, we reasoned as follows:

"Statutes of limitations are generally considered to affect the remedy only and not a substantive right. [Citation.] Statutes of limitations affect the remedy by limiting the period within which legal action may be brought or remedies may be enforced; they bar the right to sue for recovery but do not extinguish the underlying obligation. [Citation.] Because statutes of limitations generally do not affect substantive rights, we conclude that the word 'liability' used in section 2-101 does not refer to the statute of limitations and, therefore, suits brought under section 1-4-7 are not exempted from the *** statute of limitations in the Tort Immunity Act." *Hapeniewski I*, 147 Ill. App. 3d at 531.

¶ 11 To reach this result, we had to distinguish *Hecko v. City of Chicago*, 25 Ill. App. 3d 572, 578 (1975), in which we had already held that the statutory notice requirements of the Tort Immunity Act *did not* apply to a demolition claim. We reasoned in *Hecko* that section 2-101(e) of the Act was intended to "*eliminate* governmental immunity" in demolition actions. (Emphasis added.) *Id.* at 578. We distinguished *Hecko* in *Hapeniewski I* by treating the notice provision of the Act as substantive and the statute of limitations as procedural. *Hapeniewski I*, 147 Ill. App. 3d at 531.

¶ 12 Although *Hapeniewski I* was vacated by the United States Supreme Court, later decisions in the case did not disturb our original determination that the Tort Immunity Act's shorter statute of limitations applied to wrongful demolition claims. The issue appealed to the Supreme Court was whether the Act's shorter limitations period also applied to the building owner's federal civil rights action. The Court remanded the case to us for further consideration of that aspect of our decision in light of its own recent precedent. *Hapeniewski v. City of Chicago Heights*, 484 U.S. 806 (1987). Although our previous judgment was vacated, we did not disturb our initial analysis in *Hapeniewski I* regarding the limitations period for a demolition claim (see *Hapeniewski v. City of Chicago Heights*, 169 Ill. App. 3d 945 (1988) (*Hapeniewski II*)). Thus, both parties and other courts have continued to follow it.

¶ 13 The distinction that the first district in *Hapeniewski I* made between substance and procedure under section 2-101 of the Tort Immunity Act was adopted by the third district in

*Slaughter v. Rock Island County Metropolitan Mass Transit District*, 275 Ill. App. 3d 873 (1985), and by the fifth district in *Cooper v. Bi-State Development Agency*, 158 Ill. App. 3d 19 (1987), and *McClintock v. Bi-State Development Agency*, 228 Ill App. 3d 382 (1992). In *Cooper* the court held that the defendant, a public carrier, was entitled to the notice that was then required under the Tort Immunity Act, despite the language of subsection (b) of section 2-101. The court reasoned:

> "Defendant, as a public carrier, owes its passengers the highest degree of care in contrast to the lower standards of care applicable to other public entities. [Citation.] By providing that nothing in the Tort Immunity Act affects defendant's liability based upon operation as a common carrier, defendant is not 'exempt' from the Act. This provision preserves the standard of care to which defendant must adhere in order to avoid liability. Once notice is given, the liability of defendant as a common carrier is unaffected by the Act." *Cooper*, 158 Ill. App. 3d at 24-25.

In *Slaughter* and in *McClintock*, the courts followed the reasoning of *Cooper* and applied the one-year limitations period and the notice provision of the Tort Immunity Act to actions against a metropolitan mass transit district. However, *Cooper* and *Slaughter* expressly rejected the first district's distinction between the notice and statute of limitations provisions in the Act, holding instead that both provisions were procedural and therefore applied to public entities and public employees, even as to the enumerated categories of claims that were exempted from the "substantive" protection of the Act under section 2-101. *Cooper*, 158 Ill. App. 3d at 25; *Slaughter*, 275 Ill. App. 3d at 875.

¶ 14    After these appellate court decisions, our supreme court decided *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248 (2004). There, the plaintiffs sought a declaration that the Village of Long Grove did not have the authority to pass an ordinance requiring the plaintiffs to pay impact fees when they applied for building permits. *Raintree Homes*, 209 Ill. 2d at 251. The trial court had dismissed the claim on the basis that it was barred by the one-year statute of limitations in the Tort Immunity Act. *Id.* Plaintiffs appealed, arguing that their claim fell outside the scope of the Act because of the first sentence in section 2-101, which states: "Nothing in this Act affects the right to obtain relief other than damages against a local public entity or public employee" (745 ILCS 10/2-101 (West 2010)). *Raintree Homes*, 209 Ill. 2d at 254-55. Our supreme court held: "Plaintiffs' claim is an action which seeks 'relief other than damages,' as set forth in the first sentence of section 2-101, and is, therefore, excluded from the Act." *Id.* at 256 (quoting 745 ILCS 10/2-101 (West 2002)). The court made no mention of the distinction between substance and procedure that was relied upon in *Hapeniewski I* and the other cases cited above. And although *Raintree Homes* was about whether the Act applied to a claim in which the plaintiffs sought "relief other than damages," our supreme court painted with a seemingly broad brush, looking at all of the "enumerated exceptions" in section 2-101 together—including the one for demolition actions set out in 2-101(e)—in reaching its holding that section 2-101 created an exclusion from the Tort Immunity Act. *Raintree Homes*, 209 Ill. 2d at 254-56.

¶ 15    After *Raintree Homes* was decided, appellate courts abandoned the distinction between substance and procedure relied on in earlier cases and treated the claims listed under section 2-101 as simply "excluded" from any of the protections of the Tort Immunity Act.

¶ 16    In the first of these cases to be decided, *Harvest Church of Our Lord v. City of East St. Louis*, 407 Ill. App. 3d 649, 654 (2011), the court relied on *Raintree Homes* as follows:

"[I]n *Raintree Homes, Inc.*, the supreme court answered in the affirmative the precise question we are asked here: whether section 2-101 of the Tort Immunity Act operates to exclude the enumerated actions from the time limitation set forth in section 8-101(a) of the Tort Immunity Act. We are thus bound to follow its decision."

¶ 17        Other decisions followed *Harvest Church*. See *Ballinger v. City of Danville*, 2012 IL App (4th) 110637, ¶ 17; *Collins v. Town of Normal*, 2011 IL App (4th) 100694, ¶ 20; *United Airlines v. City of Chicago*, 2011 IL App (1st) 102299, ¶ 8. In *Collins*, Justice Steigmann specially concurred, agreeing with his colleagues that *Raintree Homes* required the result that the court reached but urging our supreme court to reconsider the matter and distinguish between the application of substantive and procedural provisions of the Act to the types of claims listed in section 2-101. *Collins*, 2011 IL App (4th) 100694, ¶¶ 27-28 (Steigmann, J., specially concurring). The City in this case acknowledged at oral argument that it was aware of no appellate court cases decided after *Raintree Homes* in which a court applied the distinction between substance and procedure to any claims listed in section 2-101 of the Act.

¶ 18        The trial court here relied on *Hapeniewski I* and the other cases decided prior to *Raintree Homes*. The City asks us to affirm on the basis that those cases rest on a better understanding of the statutory language and because our supreme court in *Raintree Homes* did not decide the issue presented here. Ms. Madison asks us to reverse, arguing that we are required to do so by the reasoning and holding in *Raintree Homes*. We agree with Ms. Madison that section 2-101 exempts her demolition claim from the Act, including its one-year limitation period.

¶ 19        In *Raintree Homes*, our supreme court treated all of the exceptions in section 2-101 together, making no distinction between the first sentence of section 2-101 and the second sentence that lists specific types of claims; our supreme court viewed the claim before it as "excluded" from the Act and did not qualify that exclusion based on a review of whether the provision of the Act at issue was substantive or procedural. *Raintree Homes*, 209 Ill. 2d at 254-56. Even Justice Steigmann, who disagreed with the result his colleagues reached in *Collins*, agreed that *Raintree Homes* required courts to abandon the old distinction between substance and procedure. *Collins*, 2011 IL App (4th) 100694, ¶¶ 27-28 (Steigmann, J., specially concurring.)

¶ 20        All that the City can offer in response to this is that the enumerated exceptions listed in section 2-101, including subsection (e), referencing demolition claims, were not the specific provisions of the Act that the court in *Raintree Homes* was asked to interpret. That is correct. However, where our supreme court makes a pronouncement, even where it is not essential to the disposition of the case, such a statement is either judicial *dictum*, which is entitled to "much weight," or *obiter dictum*, which can be "binding in the absence of a contrary decision of that court." (Internal quotation marks omitted.) *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 278-82 (2009). So we are surely not at liberty to simply disregard our supreme court's statements in *Raintree Homes* about section 2-101 creating an exclusion from the Act.

¶ 21        Even if we are not bound by *Raintree Homes* to reject the old distinction between procedure and substance, our own examination of the statutory language in section 2-101 confirms that the distinction is not supported. The relevant language of the statute is: "*Nothing* in this Act *affects* the liability, if any, of a local public entity or public employee, based on: *** (e). Section 1-4-7 of the 'Illinois Municipal Code', approved May 29, 1961, as heretofore or hereafter amended." (Emphases added.) 745 ILCS 10/2-101 (West 2010). The language is broad. The legislature used the words "nothing" and "affects," where it might have simply said

that the Tort Immunity Act "does not determine the liability, if any, of a local public entity or public employee" for claims of the types listed. If employed by the legislature, this more limited language might have suggested that section 2-101 provides a limited exemption, affecting only substantive rights and duties. The broad language the legislature instead chose suggests that its intent was to ensure that "nothing" in the Act—including the Act's shorter limitations period—could "affect" those types of claims. A plaintiff's claim is certainly "affected" if it is barred as untimely.

¶ 22    Finally, the law is well-settled that the Act "is in derogation of the common law and must be strictly construed against the local government entity." (Internal quotation marks omitted.) *Vaughn v. City of West Frankfort*, 166 Ill. 2d 155, 158 (1995). So to the extent that section 2-101 is unclear, we must construe it against the City and in favor of allowing claimants the longer limitations period that the legislature has provided for claims outside of the protections of the Act.

¶ 23    The City makes two statutory construction arguments, both of which we reject. First, the City argues that subsection (b) of section 2-101 supports a distinction between substance and procedure because it reflects the language that the legislature used when it wanted to create the complete exemption from the Tort Immunity Act that Ms. Madison argues for here. The second part of subsection (b) provides: "and this Act does not apply to any entity organized under or subject to the 'Metropolitan Transit Authority Act', approved April 12, 1945, as amended." The City's argument, based on the analysis in *Slaughter*, is that this blanket exception is an example of "the precise terms the General Assembly uses when it means to exempt a claim from all the provisions of the Tort Immunity Act." According to the City, the fact that this blanket exemption appears only in subsection (b) means that there is no "blanket exception" for the other claims listed in section 2-101, including the one in subsection (e) for wrongful demolition claims.

¶ 24    This argument reads too much into the language used in subsection (b). Subsection (b) contains two exemptions. The first is for "liability" "based on" "operation as a common carrier" and the second is for "any entity organized or subject to the Metropolitan Transit Authority Act." As our supreme court has recognized, the language in the second clause is a "specific exclusion *of the CTA* from the Tort Immunity Act." (Emphasis added.) *Fujimura v. Chicago Transit Authority*, 67 Ill. 2d 506, 514 (1977). Unlike the exemptions for types of claims listed in section 2-101, the exemption in the second part of subsection (b) is for a specific defendant. We do not find that the differences in the language used to articulate those exemptions compels the conclusion that one exemption is broader than the other or that, except for the CTA exemption, only the substantive protections afforded by the Act are referenced in section 2-101.

¶ 25    The City's second argument is that section 8-101 of the Tort Immunity Act, which sets out the one-year statute of limitations (745 ILCS 10/8-101 (West 2010)), was amended in 2003 in a manner consistent with the existence of a distinction between substance and procedure. This argument has no merit, once we consider the reason for that 2003 amendment.

¶ 26    The amended provision that the City relies on is subsection (b) of section 8-101, relating to claims arising out of patient care, and states as follows:

>    "(b) No action for damages for injury or death against any local public entity or public employee, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the

claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of those dates occurs first, but in no event shall such an action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in the action to have been the cause of the injury or death." 745 ILCS 10/8-101(b) (West 2010).

¶ 27  The City's argument is that the mention in this amended provision of "breach of contract" actions "demonstrates an understanding that such actions are still subject to section 8-101's limitations provisions, even though section 2-101(a) renders the substantive provisions of the Act inapplicable to them." However, the legislative history reveals that the stated purpose for this amendment was to make the limitations period applicable to claims for medical malpractice against hospitals and doctors uniform, regardless of whether a plaintiff was treated at a private or a public facility. See 93d Ill. Gen. Assem., House Proceedings, Apr. 15, 2003, at 4 (statements of Representative Hultgren) ("And what this does is it address[es] iniquity [*sic*] … inequity in the law right now where if someone goes to a … receives medical care from a public institution, they only have a one-year statute of limitations ***. If they go to a private institution it'd be a two year. What this is doing is making that all uniform.").

¶ 28  The 2003 amendment was a direct response to our supreme court's decision in *Tosado v. Miller*, 188 Ill. 2d 186, 196 (1999), holding that medical malpractice actions against a county hospital and its physician were subject to the one-year limitations period of the Act, rather than the two-year limitations period that applied generally to medical malpractice. See 93d Ill. Gen. Assem., Senate Proceedings, Mar. 20, 2003, at 54 (statements of Senator Righter) (noting that the amendment arose from a recent supreme court case). The amendment was "designed to level the playing field for patients in Illinois regardless of whether they may be in a public or private hospital. [The amendment] would make it two years across the board." *Id.* at 53-54. To accomplish this, the 2003 amendment used the identical language used in section 13-212(a) of the Code, establishing a two-year limitations period for medical malpractice claims against physicians or hospitals generally. See 735 ILCS 5/13-212(a) (West 2002). That provision also states that it applies to actions arising out of patient care, "whether based upon tort, or breach of contract, or otherwise." *Id.* The City offers us no reason to believe that the inclusion of that established language in the 2003 amendment to section 8-101(b) of the Act was in any way an endorsement by the legislature of the distinction between substance and procedure that the City wants us to recognize. Rather, it was plainly the result of the legislature's desire to ensure that the identical limitations period would apply to all claims arising out of patient care, regardless of whether the defendant hospital was a public or private institution.

¶ 29  Finally, the City argues that, even if the demolition claim was timely, Ms. Madison's other three claims are not. We agree. Ms. Madison suggests, with no citation to authority, that her claims for unlawful taking or inverse condemnation, negligence, and conversion fall outside of the scope of the Tort Immunity Act because they are "derivative" of the demolition claim and therefore also exempted by section 2-101. Ms. Madison provided no basis, in either her brief or when specifically asked about this at oral argument, for treating claims that are not listed in 2-101 as outside of the Tort Immunity Act because they are "derivative" of claims that are listed. We affirm the dismissal of these claims.

¶ 30                                           CONCLUSION

¶ 31        For the foregoing reasons, we reverse the dismissal of count I for wrongful demolition, affirm the dismissal of counts II through IV, and remand for further proceedings in accordance with this opinion.

¶ 32        Affirmed in part and reversed in part.