## James T. Snell v. J. W. Evans & Son.

1. BUILDING CONTRACTS—*Architect's Certificate When Not Conclusive.*—Where it is provided in a contract that an architect's certificate shall not exempt the contractor from liability to make work good, should it be afterward found not to be in accordance with the contract, it follows that if any substantial defect or departure from the contract escapes the attention of the architect, the contractor will be responsible, even though he may have obtained the architect's certificate.

2. SAME—*Allowing the Jury to Examine the Work.*—In actions where the question as to whether work has been done according to contract is involved, the practice of allowing the jury to inspect the work does not obtain in this State.

Memorandum.—Assumpsit. In the Circuit Court of McLean County; the Hon. THOMAS F. TIPTON, Judge, presiding. Declaration on a building contract; pleas, general issue and notice of set-off, etc.; trial by jury; verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the May term, 1894. Reversed and remanded. Opinion filed October 29, 1894.

A. E. DeMANGE, attorney for appellant.

WELTY & STERLING, attorneys for appellees.

MR. PRESIDING JUSTICE WALL DELIVERED THE OPINION OF THE COURT.

The appellees recovered a judgment in assumpsit against the appellant for $624.28, being for an alleged balance due them for building a dwelling house for him.

There was a written contract to build the house according to certain plans and specifications for the sum of $20,600, and there were certain extras amounting to $524.28, and according to the claim of appellees this sum, together with a balance of $100 on the original contract, remained unpaid.

There was no dispute as to these amounts, but the defense was that the house had not been built according to contract and that thereby the appellant had sustained damages largely in excess of the sum demanded.

The contract called for the best materials and the most

skillful workmanship, all to be under the supervision of Miller, the architect, without whose certificate the appellees were not entitled to call upon appellant for any payment for either work or material.

The building progressed under such supervision, and payments were made from time to time, until finally appellant occupied the house about March 1, 1891.

It appears that on the 1st of September, 1891, the architect gave a certificate to the appellees which entitled them to final payment, but it is a question whether it was given conditionally, as now claimed by the architect, upon their making any alterations, changes or additions necessary to bring the entire job up to the letter of the plans and specifications, or whether, as they claim, it was given absolutely and without any such conditions.

It is quite apparent that there were various defects, some very serious and others not, but all of some consequence, and when all are taken into account the appellant is justified in saying that his house is not what he had a right to expect in view of the price and the terms of the contract.

The roof leaks so that a number of the ceilings have been discolored, enough to require new decorations, and the plastering threatens to fall. Many of the doors are warped and shrunk so as to make them unsightly. Some of the wainscoting also. The vestibule and dining-room are " out of true " so that, being wider at one end than at the other, the tiling and parquetry work of the floors and the panel work of the ceiling present a bad appearance. In a costly house such a fault as this last is regarded as quite a substantial matter and no doubt properly so. The joists have shrunk so as to let the floor sag in many places.

Other complaints more or less important seem to be warranted by the facts.

Of course it is difficult to find any one willing to accept the blame for these results. As to the error in the dimensions of the vestibule and dining-room the appellees claim that the foundations were laid off by the architect and they built the walls accordingly; and as to the roof they say that

he insisted upon a certain style of valleys which have caused the leaks. As to the shrinkage in doors, floors and wain-scoting they say it is caused by the excessive heat from the steam with which the house is warmed and that no matter how thoroughly the mill work is seasoned there will be more or less such shrinkage under such circumstances. The architect does not accede to those views. As to some points the evidence is more or less conflicting, and on such matters we need express no opinion.

The contract distinctly called for lumber of the best quality, thoroughly seasoned, and fit for the various purposes for which it was to be used. The work was to be of the most skillful and substantial sort.

The walls in all cases were to be kept " perfectly straight, plumb, true and level, to be carried up to the proper and exact heights, and to a true line from one end to the other."

While the certificate of the architect was necessary to pass the work, yet it was expressly provided that such certificate should not exempt the contractor from liability to make any work good, should it be afterward found that it had not been done in accordance with the plans and specifications, both of which were made a part of the contract. It follows that if any substantial defect or departure from the contract escaped the attention of the architect, the contractor would be responsible, even though he might have obtained a certificate covering the part of work affected by such faulty items. This would seem to be applicable justly in the case of the walls of the dining-room and vestibule. As we understand the requirement of the contract it devolved upon the contractors to make the walls plumb, straight and true, and to carry them up to the proper heights on a true line from one end to the other, and they are not to be excused because the architect did not discover they had failed to do so.

They insist he is to blame because of the error in laying the foundation, but according to their own evidence as well as his, he held the plans and gave them the dimensions and distances, and they made the measurements.

Manifestly the mistake began in the measurement which they thus made. From the evidence we are inclined to think they can not avoid responsibility for this very serious defect.

Nor are we satisfied with the explanation they give as to the shrinkage of joists, doors and wainscoting, and we are disposed to believe that the materials were not properly seasoned. Something may, of course, be allowed for the action of steam, but it was known this house was to be so heated, and precautions should have been taken accordingly.

With regard to the method of making the valleys which it is said is the cause of the leakage in the roof, the evidence is quite conflicting as to what was done by the architect.

If, as averred by appellees, he directed the details of this matter, and the roof contractor made the valleys as he required, then appellees ought not to be chargeable; but this is vigorously contested, and is an open question which should be left to the consideration of another jury if the case is again tried.

Complaint is made of instructions given for appellees. We shall not notice all the objections raised. The third instruction inaccurately advised the jury that skill merely (which the jury might understand to mean ordinary skill) was required in the performance of the work when, as above noticed, the contract called for the best and most skillful workmanship.

The fifth may have misled the jury, as suggested, to suppose that unless the appellant had proved his entire claim for damages he could not recover any, though it is not very clear that such misapprehension would occur.

The eighth we regard as seriously at fault in that it holds the appellant bound by the certificate of the superintendent unless obtained by fraud or mistake, when the contract expressly provides, as already observed, that the granting of the certificate should not exempt the contractor from liability to make good any work afterward found not to have been done in accordance with the plans and specifications.

It is urged that the jury were misled and prejudiced by the offer of appellees' counsel that the jury should inspect the house.

Such a practice does not obtain in this State, and the suggestion should not have been made. Possibly it may have operated to the prejudice of appellant.

On the whole case we are not satisfied with the judgment, which, for the reasons indicated, will be reversed and the cause remanded.