The People of the State of Illinois ex rel. William E. Rexses, Appellee, v. Anton J. Cermak, President of the County Board of Cook County et al., Appellants.

### Gen. No. 30,340.

1. SHERIFFS AND CONSTABLES—*duty to patrol highways to main-tain peace and prevent crime.* Where the facilities for trans-portation afforded by modern conditions result in the recurrent assemblage of large numbers of people in remote sections of the

county, entailing an increased prevalence of crime and disorder along the county highways, it becomes the duty of the sheriff, having knowledge of such conditions, to exercise such power as he may possess to suppress such crime and disorder, which may include the assignment of deputies in motor vehicles to patrol such highways.

2. SHERIFFS AND CONSTABLES—*necessity for appointment of deputies assigned to highway patrol duty.* Any question as to the necessity for the appointment of a sufficient number of deputies to permit the sheriff to patrol the county highways for the suppression of crime and disorder thereon, is exclusively for the determination of the circuit court in the discharge of its constitutional function relative to fixing the number of such deputies.

3. SHERIFFS AND CONSTABLES—*duty of county board to provide for compensation of deputies authorized by rule of court.* Where the circuit court by rule authorized the sheriff to appoint three "sergeant deputy sheriffs" requested by the sheriff "to have charge of officers in patrolling highways, apprehending criminals and maintaining peace on the county roads," it became the duty of the county board to make the necessary appropriation for their compensation.

4. SHERIFFS AND CONSTABLES—*time for appointment of deputies.* Under the sheriffs' statute, Cahill's St. ch. 125, ¶ 7, the sheriff may appoint deputies to the number fixed by rule of court at any time during the fiscal year for which they are allowed, without reference to whether the county board has provided for their compensation.

5. COUNTIES—*veto of appropriation for salary of deputy sheriff as relieving board of duty to provide compensation.* The fact that the president of the county board vetoed an appropriation for the salary of a deputy sheriff appointed pursuant to authority conferred by rule of court did not relieve the county board from complying with its constitutional duty to provide compensation for such duty, although the veto was given, and by inaction of the board upheld, on the ground that the duty to which such deputy was assigned did not come within the function of the sheriff's office.

6. MANDAMUS—*performance of duty of county board to provide compensation for authorized deputy sheriff.* Mandamus will lie to compel the county board to determine and provide for the compensation of a deputy sheriff appointed pursuant to a rule of the circuit court, where the failure of the board to appropriate for that purpose resulted from its inaction following the veto of an appropriation by the president of the board, although such veto was interposed upon the ground that the appointment of such deputy was unauthorized.

The People v. Cermak, 239 Ill. App. 195.

7. MANDAMUS—*determination of amount of compensation directed to be paid to deputy sheriff by county board.* It is beyond the power of the court, by an order of mandamus, directed to the county board, to fix the compensation to be paid by such board to a deputy sheriff, this being wholly a matter for the determination of that body.

Appeal by defendants from the Superior Court of Cook county; the Hon. Jesse Holdom, Judge, presiding. Heard in the second division of this court for the first district at the December term, 1924. Reversed and remanded with directions. Opinion filed December 29, 1925. Rehearing denied January 13, 1926.

William F. Struckmann, Henry A. Berger and Hayden N. Bell, for appellants.

George F. Barrett, for appellee.

Mr. Presiding Justice Barnes delivered the opinion of the court.

This is an appeal from an order of mandamus entered November 5, 1924, requiring the members of the Board of Commissioners of Cook County to appropriate the sum of $100, at a regular meeting to be held during the first quarter of the fiscal year commencing on the first Monday of December, 1924, in favor of William E. Rexses, the petitioner and relator, and requiring the necessary formalities by the proper county officers for the issuance and payment to the relator of a warrant for that sum.

The main facts as set forth in the petition on which the relator's claim is based are in substance as follows:

In the application of the sheriff of Cook county to the circuit court for assignment of necessary help for his office for the fiscal year commencing December 1, 1923, he asked for deputies in addition to those allowed him for the previous fiscal year, "in order that the county highways in Cook County may be properly policed and life and property protected." On January

31, 1924, pursuant to its power given by section 9 of
article X of the State Constitution, the circuit court
entered a rule fixing the number of the sheriff's depu-
ties, which continued the force of the previous year,
including three "sergeant highway deputy sheriffs"
requested by the sheriff "to have charge of officers in
patrolling highways, apprehending criminals and main-
taining peace on the county roads." On notice of the
rule the board, on February 29, 1924, passed the an-
nual appropriation bill for that fiscal year, which pro-
vided a salary for the several deputies allotted, includ-
ing $200 per month for said sergeant highway deputies.
On March 3, 1924, the president of the county board
returned said bill with his veto of the item pertaining
to the three sergeant deputies, on the ground that their
duties are not a part of the sheriff's duties. The board
failed to pass the bill over his veto. Later, in August,
1924, the relator was appointed as one of said ser-
geants, and, after serving from September 1 to Sep-
tember 15, inclusive, of that year, he made a demand
on the proper officers of the county for payment of $100
as compensation for his service which demand was
refused.

Defendants filed an answer—more, however, in the
nature of a demurrer—admitting these facts and alleg-
ing in substance that the duties of the relator as such
highway deputy sheriff are not functions and duties
of the sheriff's office but merely "police duties," and
that the allotment of deputies to perform such duties
was in violation of the provisions of sections 9 and 12
of article X of the Constitution, and was without prece-
dent prior to the previous fiscal year, when he was
allowed such help on the representation that advantage
had been taken of the extension of the vast system of
parks and paved roads through the county, to build
adjacent thereto road houses and dens of vice where
the vicious elements of society congregated, and that
owing to resultant and frequent hold-ups, burglaries,

thefts and attacks upon women, citizens were making vigorous demands on him for protection.

A demurrer to the answer was sustained, and, standing by their answer, defendants took an appeal direct to the Supreme Court, which, holding that there was no constitutional or other question involved that gave that court jurisdiction thereof, transferred the cause to this court, saying: "The question presented for decision is whether or not the duties of appellee as alleged in the pleadings are properly a part of the sheriff's duties. If so, the answer was demurrable; if not so, the answer was legally sufficient as a defense to the petition for *mandamus*." (*People v. Cermak*, 317 Ill. 590.)

The question, therefore, is brought within narrow limits. In determining it we need not discuss the common-law powers and duties inherent in the office of sheriff, for they are regulated by the statute on sheriffs (chapter 125, Rev. St.) which, with respect to his power and duties, is largely declaratory of the common law. Section 17 thereof provides: "Each sheriff shall be conservator of the peace in his county, and shall keep the same, suppress riots, routs, affrays, fighting, breaches of the peace, and prevent crime; and may arrest offenders on view  *  *  *." [Cahill's St. ch. 125, ¶ 17.]

That such duties are in their very nature police duties is not open to question. (*Scougale v. Sweet*, 124 Mich. 311; *State v. Reichman*, 135 Tenn. 653; *South v. State of Maryland*, 59 U. S. 401.) Discussing the duties of a sheriff in the Tennessee case the court said: "His duties are not merely to apprehend those who have committed offenses but to prevent such offenses. *  *  *  The duties imposed cannot be performed without some degree of activity and diligence to inform himself of conditions in his county." While the court there did not attempt to decide that it is his duty to patrol the county, as the streets of the city are pa-

trolled by the police,—a question not before that court, —it did hold that it is the duty of the sheriff and his deputies to keep their eyes open for evidence of public offenses, and referred to the fact that although his authority as conservator of the peace extends over the entire county, there is not ordinarily the same reason for vigilance on his part in a city as outside of it, because one of the chief reasons for the incorporation of cities is to provide, in their more densely populated sections, better police protection than in the nature of things the sheriff's office can afford.

But while conditions in the past may not have required, or afforded precedents for, patrolling the highways of a county to maintain peace and prevent crime, as is generally required in the denser population of cities, it does not follow that under changed conditions incident to modern social and economic developments such a necessity may not arise; and if it does, it can hardly be questioned that the police function of patrolling would attach to the duties of the sheriff. It is, after all, a mere method of performing police duties, and we see no reason why the sheriff may not adopt it, where it is most practicable to enable him to perform his duties. Indeed, the conditions described in the petition suggest that in certain portions of the county the necessity for police patrol is just as imperative as in cities under like conditions. By reason of the modern facilities afforded by automobiles and paved roads, large numbers are able to congregate in remote places of the county, where the necessity of suppressing disorder, and to prevent more serious violations of the law, demand the presence and continued vigilance of the sheriff's deputies. This is best accomplished, it appears, by detailing deputies along the highways on motorcycles, or in automobiles. Shall it be said, then, that the sheriff may not employ such means of police protection as are commensurate with the necessities of such a situation, and assign deputies to patrol the

highways with motorcycles or in the most practicable way to enable him to perform his duties under such circumstances?

That the necessity for patrolling county highways has arisen only recently, as an incident to modern development and changed conditions, presents no valid argument why such method may not be employed in country districts where needed. The police power "is not circumscribed by precedents arising out of past conditions, but is elastic and capable of expansion in order to keep pace with human progress." *City of Aurora v. Burns,* 319 Ill. 84. With his knowledge of the prevalence of crime and disorder along county highways in consequence of these changes it is unquestionably the duty of the sheriff as conservator of the peace to exercise such power as he possesses to suppress them, and if patrolling highways is the most practicable or desirable method of exercising it we know of no legal restriction upon his adoption of it, or of any limitation on the power of the circuit court to allow a sufficient number of deputies for such service. The necessity therefor is wholly for that court's determination in fixing their number, and if deputies are allowed in contemplation of such necessity it becomes the duty of the county board to make the necessary appropriation.

By express authority of the sheriff's statute (Sec. 7) [Cahill's St. ch. 125, ¶ 7] he may appoint deputies not exceeding the number allowed by the rule of said court, and it is contemplated that he may appoint them any time during the fiscal year for which they are allowed, whether before the board acts, or, as in the instant case, after it fails to act. For if he were compelled to defer their appointment until their compensation was fixed by the county board, which might take the ninety days allowed by the statute for making the annual appropriation, the wheels of government might stop in the interim for want of an appropriation. Manifestly

the mandatory provision of the constitution does not contemplate the possibility of such a situation.

The relator, therefore, having been duly appointed to the position of deputy sheriff as authorized by the rule of said court, in pursuance of its power under the constitution, it became the duty of the board of commissioners to fix his compensation. The board did so in the original appropriation bill but failed to do so after the same was vetoed. While under the statute (Cahill's St. ch. 34, ¶ 66 [3]) the president of the county board has authority to veto resolutions and motions whereby any money shall be appropriated, and may thereby question the propriety or necessity of expenditures, or the amount of salaries appropriated for the assistants of county officers, we apprehend that the exercise of such power cannot be construed to relieve the county board from complying with its mandatory duty under the constitution to fix some compensation for the number of assistants authorized by rule of the circuit court. A reasonable construction of that statute will harmonize with such constitutional provisions which cannot be thwarted. While the president of the board sought to justify his veto on the theory that the patrolling of county highways was a police duty which did not come within the function of the sheriff's office, yet, as before stated, the determination of that question was necessarily for the circuit court. We may easily distinguish the right to veto from improper reasons for exercising it.

But while as a result of the veto there was no appropriation made to cover compensation for relator, and while the board may properly be mandamused to determine the same, the court has no power to fix the amount of his compensation as it undertook to do. That is wholly a matter for the county board to determine, which will doubtless fix compensation that will be reasonable.

The order, therefore, must be reversed with direc-

tions for its modification by eliminating therefrom the provision for a specific sum, and by requiring the appropriation to be made at a regular meeting to be held during the first quarter of the present fiscal year, which began on the first Monday of December, 1925.

*Reversed and remanded with directions.*

Gridley and Fitch, JJ., concur.