ARTHUR J. HOLDA, Plaintiff-Appellee, *v.* THE COUNTY OF KANE,
Defendant-Appellant.

Second District   No. 78-252

Opinion filed September 11, 1980.

SEIDENFELD, P. J., specially concurring.
WOODWARD, J., dissenting.

Roger W. Eichmeier and Stephen J. Mrkvicka, both of Matthews, Dean, Eichmeier, Goodin & Mrkvicka, of Aurora, for appellant.

William J. Harte and Philip E. Howard, both of Chicago, for appellee.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

Defendant, the County of Kane, appeals from a judgment entered upon a jury verdict by the Circuit Court of Kane County, Illinois, which awarded plaintiff, Arthur J. Holda, $175,000 in compensatory damages and $500,000 in punitive damages for injuries sustained due to the alleged negligence of the sheriff in the operation of the Kane County jail. We affirm in part and reverse in part.

On April 2, 1970, the plaintiff filed a complaint against the County of Kane, seeking to recover judgment against the defendant county for its alleged negligence on August 16, 1969. Plaintiff alleged that on that date he suffered severe and permanent injuries as the result of an attack upon him by fellow inmates of the defendant county's jail, an attack that continued over a period of many uninterrupted hours. Count I of the complaint charged that prior to and at the time of the attack, defendant county owed plaintiff the duty of exercising reasonable care to provide for his safety while a prisoner in the defendant's jail, and that defendant carelessly and negligently failed to exercise reasonable care. In count II of the complaint, plaintiff alleged that defendant was guilty of willful and wanton misconduct in the operation and control of its jail so that the plaintiff was injured as a direct and proximate result. The complaint requested judgment against defendant in the amount of $250,000 actual damages and $150,000 punitive damages.

On November 8, 1973, the defendant filed its answer to the complaint as amended. In its answer the defendant admitted, *inter alia*, the paragraph alleging that the defendant through its officers, agents, and employees, including the sheriff, owned, operated, controlled and maintained the Kane County jail. The defendant's answer also admitted that the defendant carried a $500,000 liability insurance policy.

On September 7, 1976, plaintiff filed an amended complaint wherein he reiterated the contents of his original counts I and II but requested judgment against defendant in the amount of $500,000 for each of those counts, and added count III, which charged the defendant with violating the plaintiff's rights under 42 U.S.C. §1983 (1976) and requested judgment against defendant in the amount of $500,000 under count III. On September 27, 1977, the plaintiff moved to completely withdraw the amended complaint and to proceed on the original complaint as amended, and to amend the *ad damnum* clause in count II of the original complaint to raise the punitive damages requested from $150,000 to $500,000. The trial court granted the plaintiff's motion to proceed on his original complaint and to amend count II so as to raise the amount of punitive damages to $500,000.

On September 29, 1977, defendant moved to dismiss the cause of

action on the basis that plaintiff had failed to name as defendant the proper party or parties. Defendant argued that the suit should have been brought against the sheriff of Kane County. The court denied defendant's motion. Defendant then moved for leave to file an amended answer to the complaint to deny plaintiff's allegations of defendant's agency relationship with the employees of its jail. This motion was also denied.

The trial evidence revealed that plaintiff, Arthur J. Holda, had been arrested at his residence on August 15, 1969, for the minor offense of disorderly conduct. On the previous day, plaintiff had been intoxicated in a tavern and had broken the glass on a juke box. His hand was cut as a result. The arresting officer put some bandaids and medicine on the hand. Plaintiff had a history of hospitalizations for mental problems, and had stuttered since the age of nine or 10. Plaintiff was also born with a deformed right arm, which was withered and useless. At the time of his arrest, plaintiff was 40 years old.

The plaintiff was taken to the Kane County jail on the afternoon of August 15, 1969. He was to have been held there until August 18, when he was to be transferred to Elgin State Hospital for mental evaluation because of his prior mental problems. At the time plaintiff was booked, he told the jailers about his deformed and paralyzed right arm and about a broken finger on his left hand. Plaintiff asked to be locked up alone.

A correctional officer at the Kane County jail when the plaintiff was an inmate there testified about the jail's booking procedure in August 1969. The incoming prisoners were recorded in a book, together with the booking date, release date, and release authority, as well as information about the crime for which they were imprisoned, but nothing about their prior record. The only other record prepared on each prisoner was a temporary card which would contain the prisoner's name, age, birthdate, sex, color, address, offense, occupation, and list of personal property. Medical histories were not obtained from incoming prisoners. There were no rules or regulations whereby a booking guard would inquire about a physical defect or deformity an incoming prisoner might have. There was no cell block in the jail for prisoners with mental or physical handicaps. Persons confined in the jail on felony charges were not segregated from persons confined on misdemeanors or drunk driving charges, nor was there a regularly established sick call.

On the evening of August 15, 1969, plaintiff was assigned to a cell block on the third floor of the jail, where plaintiff was confined with a number of other prisoners. A combination radio-intercom could be used to monitor the upstairs cells in the jail, but when music was piped over the system, there was no way for the jailers to hear what was going on in the cells. The cells were only rarely monitored during the day, and when

music was being played, it could be difficult from the first-floor desk to hear someone call for help from the third-floor cell block where plaintiff was confined.

Plaintiff testified that shortly after breakfast on August 16, 1969, the day after he was confined in the jail, another inmate accused plaintiff of being a police spy. About three other inmates told the plaintiff that they were going to hold a kangaroo court. They dragged the plaintiff out to a table for the "trial." They found the plaintiff guilty. Then they dragged him over to the barred wall and tied his arms to the bars. They tied his neck tightly to the bars. They used ropes made of braided blanket strips. Plaintiff worked his arm loose and hit one of his assailants. The other two assailants began fighting and kicking him. Another inmate came over and began beating and kicking him. They beat him in the head and face for several minutes. The plaintiff screamed, but no one responded to his screams. Then a guard appeared and took the plaintiff downstairs to bond call before a judge, who set the plaintiff's bond at $1,000. The other inmates had warned the plaintiff before he went downstairs that if he talked about what had happened, they would kill him.

Plaintiff was returned to the cell block after the bond call, and he was again attacked by the other cell inmates. Plaintiff was then subjected to a vicious attack which lasted approximately six hours. The details of the second attack need not be recited here; suffice it to say that the assault on plaintiff was brutal and degrading.

At about 5 p.m. on August 16, a jailer responded to a call for help from the third-floor cell block. The jailer went up to the cell block and saw that the plaintiff was bloody and his eyes were black, that he had received a terrific beating. Plaintiff was dazed, half-conscious, and incoherent, and was taken to a hospital by ambulance where he was admitted.

A physician testified that he saw the plaintiff in the hospital emergency room on August 16, 1969. An examination revealed numerous bruises and abrasions to the head, arms, legs, back, trunk and chest. The plaintiff was unable to give the doctor a medical history, which was provided instead by the escorting police officers. The doctor observed that the plaintiff had pain when he breathed and moved the extremities. X rays revealed fractures of the bones surrounding the eye, the cheek and the jawbone on the right side of the face, as well as two fractures of the nose. A scalp laceration down to the skull bone and three or four inches long required suturing. The plaintiff's body had various small burn spots caused by a very hot object. He sustained fractures of the 10th front rib and of the 11th and 12th rear ribs. One of his lungs was punctured by a broken rib. The plaintiff required five days of hospitalization. In the physician's opinion, the nose fractures sustained by the plaintiff would cause permanent damage; and the jaw and facial fractures could cause a

permanent chewing problem. He also testified that the plaintiff's nose, jaw, and back problems at the time of trial were consistent with the injuries from a 1969 beating.

A criminologist was called by the plaintiff as an expert witness in the field of corrections. He was asked a hypothetical question based on varsious facts in this case. It was his opinion that the Kane County jail was not up to minimum standards in 1969, including the correctional standards issued by the American Corrections Association. The witness detailed proper standards as to jail manpower, prisoner in systems, prisoner surveillance and monitoring, and complete segregation of prisoners so that "kangaroo courts" could not occur. He cited the Kane County jail's prisoner intake system of 1969 defective because, *inter alia*, it did not take into consideration that the plaintiff had a withered arm and a stuttering problem. The expert stated that the plaintiff, with a mental condition, should have been kept under observation every 30 minutes by jail personnel.

A number of correctional officers testified for the defense. Among them was the sheriff at the time of the assault in 1969, who testified that in 1969 he had never heard of the American Corrections Association. At the time of the assault on the plaintiff, the Kane County jail had rules. One rule was that inspection of the jail was to be made by guards every 20 to 30 minutes.

A deputy sheriff testified that security checks were made of the jail at the time in question at least once an hour. The deputy also testified that he was advised of the jail rules pertaining to security checks only by what he heard from other jailers. In 1969 he had not heard of the American Corrections Association. There were no standards in the Kane County jail in 1969 as to special placement of prisoners like the plaintiff who had a paralyzed arm. The jail had no written rules as to segregating prisoners or taking medical histories of inmates.

At the close of all the evidence, plaintiff's motion for directed verdict as to count I (ordinary negligence) was granted. Defendant's motion as to directed verdict on each count was denied. The court directed the jury to find in favor of plaintiff and against defendant on count I of the complaint.

The following interrogatory was given to the jury: "Was the defendant, County of Kane, guilty of willful and wanton conduct before and at the time of the occurrence described which proximately contributed to cause injury to the plaintiff." The jury answered: "Yes." The jury found for the plaintiff and against the defendant under the issues presented both in count I and count II of the complaint and assessed the following damages: $175,000 as actual damages and $500,000 as punitive damages. The county appeals.

## I.

Defendant first argues that, under section 2—102 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1975, ch. 85, par. 2—102), a county cannot be held liable for punitive damages in any tort action as a matter of law, and that such immunity is not waived by the purchase of a policy of insurance under section 9—103 of the Act (Ill. Rev. Stat. 1975, ch. 85, par. 9—103). I disagree.

Section 2—102 states:

> "Notwithstanding any other provision of law, a local public entity is not liable to pay punitive or exemplary damages in any action brought directly against it by the injured party."

This section clearly and unequivocally prohibits the assessment of punitive damages against a "local public entity," which, under the definitions set forth in section 1—206 of the Act (Ill. Rev. Stat. 1975, ch. 85, par. 1—206), includes counties.

■■ However, it is equally clear that a local public entity waives the "defenses and immunities" provided by the Act by purchasing a policy of liability insurance (Ill. Rev. Stat. 1975, ch. 85, par. 9—103; *Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 347 N.E.2d 705). Defendant, recognizing this principle, replies that the immunity provided in section 2—102 of the Act is not waived by the purchase of insurance because of the phrase "notwithstanding any other provision of law," which precedes and modifies the grant of immunity set forth in that section. No other section of the Act contains this prefatory phrase; it is unique to section 2—102. Defendant interprets this singular phrase as a "categorical mandate" that punitive damages may not be awarded in an action brought against a local public entity under any circumstances.

Thus, we are faced with two apparently co-equal provisions calling for apparently contradictory results. In my opinion, the resolution of this issue lies in the determination of the proper meaning and construction to be given to the phrase, "notwithstanding any other provision of law." A clue is provided by the special definition set forth in section 1—205 (Ill. Rev. Stat. 1975, ch. 85, par. 1—205) for the word "law." This word, as used in section 2—102 and the other sections of the Act, includes "constitutional provisions, statutes, ordinances, and case law." When the word "law" is given the expansive definition required under section 1—205 of the Act, the meaning of this phrase becomes clear. The prefatory phrase "notwithstanding any other provisions of law" was intended by the General Assembly to clarify the relationship between the Tort Immunity Act, which prohibits the assessment of punitive damages against a local public entity, and all other statutes or common law actions which may allow the assessment of punitive damages in certain circumstances. For example, in

*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, the supreme court held that punitive damages may be awarded where an employee is wrongfully discharged in retaliation for filing a workmen's compensation claim. The phrase "notwithstanding any other provision of law" mandates that *Kelsay* should not be read as authorizing an award of punitive damages against a municipal employer. Thus, where an action is brought against a local public entity based on a statutory provision of common law action which allows an award of punitive damages, section 2—102, as presently drafted, I think, makes it clear that the statute or case upon which the action is based may not be construed as permitting the assessment of punitive damages against the local public entity.

■■ Hence, I do not agree with defendant's argument that this phrase was intended to prohibit the award of punitive damages against a local public entity where the municipality has purchased a policy of liability insurance. If the General Assembly had intended to accomplish this result, it could easily have done so by specifying that a local public entity does not waive its immunity from punitive damages by purchasing a policy of insurance in section 9—103 of the Act. It did not do so, however. Exemptions and exceptions cannot be read into an act where none are specified or can be inferred by clear implication. *Harvey Firemens Association v. City of Harvey* (1979), 75 Ill. 2d 358, 363, 389 N.E.2d 151, 153.

■■ Finally, it should be noted that a public entity which procures a policy of liability insurance agrees, under the express terms of section 9—103(b) (Ill. Rev. Stat. 1975, ch. 85, par. 9—103(b)), to waive " * * * its immunity from suit by reason of the defenses and immunities provided in this Act." Since section 2—102 is a defense provided by the Tort Immunity Act, it is waived by the county upon the purchase of a policy of liability insurance. (See *Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 173, 347 N.E.2d 705, 709.) Thus, I conclude that defendant's argument in this regard is without merit.

Alternatively, defendant contends that the trial court erred in submitting the issue of punitive damages to the jury even if the county's exemption from the payment of such damages is waived by the procurement of liability insurance. Section 2—111 of the Act (Ill. Rev. Stat. 1975, ch. 85, par. 2—111) states:

> "Nothing contained herein shall operate to deprive any public entity of any defense heretofore existing *and not described herein.*" (Emphasis added.)

Defendant argues that because the immunity of a county from punitive damages antedates the enactment of the Tort Immunity Act (*e.g., City of Chicago v. Langlass* (1869), 52 Ill. 256; *George v. Chicago Transit Authority* (1978), 58 Ill. App. 3d 692, 374 N.E.2d 679), such a defense is preserved by operation of section 2—111. I again disagree. By its very terms, section

2—111 applies only to defenses existing prior to the enactment of the Tort Immunity Act and not described therein. As the immunity to punitive damage awards is in fact described in section 2—102 of the Act, section 2—111 is not operative. Defendant's citation to *Lansing v. County of McLean* (1978), 69 Ill. 2d 562, 372 N.E.2d 822, is inapposite, as the defense asserted by the county in that case was not set forth in the Tort Immunity Act.

I thus conclude that a local public entity waives its immunity from punitive damages by procuring a policy of liability insurance. Accordingly, I am of the opinion that the trial court acted correctly in refusing to strike plaintiff's claim for punitive damages.

## II.

Defendant next argues that the trial court erred in denying its motion to dismiss plaintiff's complaint for failure to sue the proper party or parties as defendants in this action. Specifically, defendant contends that, since the sheriff is an independent constitutional officer whose actions are not subject to control by the county, the county cannot be held liable on a vicarious liability theory for injuries sustained by a county inmate due to the negligence of the sheriff or his deputies in the operation of the jail. We disagree.

The statutory and common law duties of the sheriff, and the authority, responsibilities, and purpose of a county organization, must necessarily be given close attention here. It has long been held that a county is a public corporation connected with the administration of State government and which exists solely for public purposes. (*Clare v. Bell* (1941), 378 Ill. 128, 37 N.E.2d 812.) As stated by our supreme court in *County of Cook v. City of Chicago* (1924), 311 Ill. 234, 239-40, 142 N.E. 512, 513:

> "*Quasi* municipal corporations, such as counties and townships, are at most but local organizations, which are created by general law, without the consent of the inhabitants thereof, for the purpose of the civil and political administration of government, and they are invested with but few characteristics of corporate existence. They are, in other words, local subdivisions of the State created by the sovereign power of the State of its own will * * * . * * * County and township organizations are created in this State with a view to aid in carrying out the policy of the State at large for the administration of matters of political government, finance, education, taxing, care of the poor, military organizations, means of travel and the administration of justice. The powers and functions of county and township organizations, therefore, as distinguished from municipal corporations, have a direct and exclusive bearing on and refer-

ence to the general, rather than the local, policy of government of the State."

In the execution of State policy, the county has been given a number of specific duties and responsibilities pertaining to the administration of criminal justice. Pursuant to section 26 of "An Act to revise the law in relation to counties" (Ill. Rev. Stat. 1975, ch. 34, par. 432), the county board is required to: provide and keep in repair a courthouse, jail, and other county buildings, and to provide proper accommodations for the State's Attorney, sheriff, and other county officers. Pursuant to sections 24, 25, and 27 of "An Act to revise the law in relation to jails and jailers" (Ill. Rev. Stat. 1975, ch. 75, par. 24, 26 and 27):

(a) The county must bear the cost and expense of keeping, maintaining, and furnishing the county jail, and of keeping and maintaining the prisoners thereof;

(b) the county grand jury must inspect and examine the jail each term and report to the county court;

(c) the circuit court must enforce the county grand jury's obligation to inspect the jail and must provide the county board with a copy of the jail report.

It is also long established that the sheriff is the chief law enforcement officer of the county. (*People ex. rel Davis v. Nellis* (1911), 249 Ill. 12, 94 N.E. 165.) "Sheriffs, as elected under the constitution, have the same powers with which they were clothed at common law." (*Dahnke v. People* (1897), 168 Ill. 102, 112, 48 N.E. 137, 141.) While the duties of the sheriff have been set forth in the statutes, these statutory duties are to a great degree merely declaratory of the sheriff's common law authority. (*People ex rel. Rexses v. Cermak* (1925), 239 Ill. App. 195.) These statutory duties include the following:

(a) The sheriff is the conservator of the peace in his county and has the power and duty to keep the peace, suppress riots, prevent crime, and arrest offenders. (Section 17 of "An Act to revise the law in relation to sheriffs," Ill. Rev. Stat. 1975, ch. 125, par. 17 (hereafter "Sheriff's Act").)

(b) The sheriff is entrusted with the care and custody of the courthouse and jail in the county, and of the prisoners of the jail. Section 14 of the Sheriff's Act, Ill. Rev. Stat. 1975, ch. 125, par. 14.

Upon consideration of these authorities, we believe it is apparent that the sheriff is a county officer whose common law and statutorily imposed duties are intended to benefit the county as a whole. Therefore, the county must be held liable on a *respondeat superior* theory for the negligence of the sheriff in the execution of his official duties. It is true, as defendant argues, that the county board has no power to supervise, direct

or control the actions of the sheriff in the operation of the jail. (See *Dahnke v. People* (1897), 168 Ill. 102, 48 N.E. 137; *People ex rel. Walsh v. Board of Commissioners* (1947), 397 Ill. 293, 74 N.E.2d 503.) However, we do not believe that it automatically follows from this proposition that the county may not be held liable on a vicarious liability theory for injuries occasioned by the sheriff's negligence. The "control" test is merely one of a number of justifications offered for the vicarious liability theory doctrine of *respondeat superior*. (Prosser, Torts §69, at 459 (4th ed. 1971).) While the degree to which the employee is subject to the control of the employer remains an important consideration in determining whether the employer will be held liable for the employee's negligence on a vicarious liability theory, the absence of direct control does not, *ipso facto*, negate liability. This is particularly true with respect to a county officer, such as the sheriff, whose actions and duties involve a great deal of discretion, but yet are performed entirely on behalf of the county itself.

There are apparently no cases holding or considering whether the county may be held liable on a vicarious theory for the negligence of the sheriff. This is not surprising, because prior to *Molitor v. Kaneland Community Unit School District No. 302* (1959), 18 Ill. 2d 11, 163 N.E.2d 89, counties and other municipal corporations were totally immune to suit under the doctrine of governmental tort immunity.[1] In the absence of such immunity we believe it is self-evident that the county may be liable on a vicarious liability theory for the negligence of its sheriff occurring in the course of his duties. The sheriff is clearly a county officer whose actions are performed on behalf of the county. Like a corporation, a county can act only through its officers, servants, and agents (see *Village of Wilsonville v. Earthline Corp.* (1978), 65 Ill. App. 3d 392, 394, 382 N.E.2d 689, 691); like a corporation, therefore, a county should be held liable for the negligence of its officers, servants, and agents occurring in the course of county business.

■■ Defendant also argues that section 22.1 of "An Act to revise the law in relation to counties" (Ill. Rev. Stat. 1975, ch. 34, par. 301.1), which requires the county to indemnify the sheriff in the event a valid civil judgment is rendered against him or his deputies, impliedly grants immunity to the county from direct liability in any tort action. A similar argument was rejected by this court in *Krieger v. Village of Carpentersville* (1972), 8 Ill. App. 3d 243, 289 N.E.2d 481. However, we believe that the supreme court's decision in *Arnolt v. City of Highland Park* (1972), 52 Ill. 2d 27, 282

---

[1] We note that a number of cases are occasionally cited for the proposition that the doctrine of *respondeat superior* does not apply to municipal corporations. (See 14 Ill. L. & Prac. *Counties* §52, (1968), citing, *inter alia, Hollenbeck v. County of Winnebago* (1880), 95 Ill. 148, *Savoie v. Town of Bourbonnais* (1950), 339 Ill. App. 551, 90 N.E.2d 645.) However, a close examination of these cases demonstrates that the town or county could not be sued because of governmental tort immunity from suit.

N.E.2d 144, is dispositive of this issue. In *Arnolt*, an automobile passenger brought an action against a police officer of the city of Highland Park for injuries sustained in a motor vehicle accident with the patrol car driven by the officer. One count of the complaint was purportedly grounded upon sections 1—4—5 and 1—4—6 of the Illinois Municipal Code (Ill. Rev. Stat. 1969, ch. 24, pars. 1—4—5 and 1—4—6), which requires a public entity to indemnify a policeman for any judgment recovered against him in a civil action arising out of the performance of his duties as a police officer. In holding that the trial court acted correctly in striking this count of the complaint, the court reasoned:

> "The indemnity provision of the Illinois Municipal Code pertains to an indemnification by the municipal entity. *It neither imposes liability upon, nor grants immunity to a municipality.* It prescribes only when a public entity will indemnify a policeman for a judgment rendered against him." (Emphasis added.) (52 Ill. 2d 27, 32, 282 N.E.2d 144, 147.)

*Arnolt* is clearly controlling here; the indemnity provision for the sheriff as stated in the counties act neither creates liability nor provides immunity from suit in any civil action. It merely sets forth the conditions upon which the sheriff will be indemnified by the county. Thus, we conclude that defendant's argument in this regard is without merit.

Defendant also argues that the trial court erred in refusing to allow it to amend its answer to deny agency. In the answer first filed in 1973, defendant admitted the allegation in plaintiff's complaint that the county, through its officers, agents, and employees (including the sheriff), owned, operated, controlled and maintained the Kane County jail. Immediately before trial began in 1977, defendant moved for leave to file an amended answer which would deny rather than admit this allegation. The motion was denied. We need not consider the correctness of the trial court's ruling, however, as no prejudice resulted to the defendant. It is apparent from the record and from defendant's brief in this court that defendant requested leave to amend its answer solely to preserve its legal argument that the county is not liable as a matter of law for the negligence of the sheriff. This argument, however, was properly raised by a motion to dismiss, and as a result, defendant's legal argument was preserved for review. Hence, no prejudice resulted to defendant from the denial of its motion to amend.

### III.

Defendant has raised two arguments which pertain to the allegedly prejudicial and improper conduct of plaintiff's counsel occurring in the presence of the jury. Specifically, defendant argues that: (1) plaintiff's closing argument was improper and prejudicial; and (2) plaintiff's counsel

committed reversible error by requesting a jury view of the old jail (where plaintiff's injury occurred) in the presence of the jury. We find no error of the magnitude to require reversal.

■■ Defendant's first argument is that plaintiff's closing argument was unfair and improper. However, no objection was made to the comments singled out by defendant, and as a result, we believe the issue has been waived. *McElroy v. Force* (1967), 38 Ill. 2d 528, 535, 232 N.E.2d 708, 712; *County of Cook v. Colonial Oil Corp.* (1958), 15 Ill. 2d 67, 153 N.E.2d 844, 848.

■■ Defendant next argues that the motion made by plaintiff's counsel for a jury view of the old jail was prejudicial in view of the subsequent denial of this motion by the trial court. It is generally considered improper for trial counsel to request a jury view while in the presence of the jury, because the jury may incorrectly infer that the party objecting to the motion wishes to conceal damaging facts. (Annot., 76 A.L.R.2d 766 (1961); see *Snell v. J. W. Evans & Son* (1894), 55 Ill. App. 670.) However, we cannot agree that this error by trial counsel was either prejudicial or constitutes reversible error here. In denying the motion for jury view, the trial court announced to the jury that it accepted full responsibility for denying plaintiff's motion; thus, no adverse motion or inference could be attributed to defendant. Moreover, defendant objected out of the presence of the jury, so it is unlikely that the jury was even aware of a defense objection to the motion. Consequently, defendant could not be prejudiced by plaintiff's motion.

For these reasons, defendant's claims of trial error are without merit.

## IV.

Three separate arguments are raised by defendant which, in general, relate to the weight and sufficiency of the evidence. Defendant argues (1) that the trial court erred in directing a verdict for plaintiff on that count of the complaint which alleged ordinary negligence on the part of the jailers, (2) that the jury's verdict for plaintiff on the count alleging willful and wanton misconduct is not supported by the evidence and is against the manifest weight of the evidence, and (3) that the compensatory damages awarded by the jury are excessive. These contentions are considered in turn below.

■■ First, we agree with plaintiff's argument that the trial court did not err in directing a verdict for plaintiff on count I charging the defendant with ordinary negligence. It is proper to direct a verdict for a plaintiff at the close of all the evidence when the plaintiff has made out a case of liability by the overwhelming weight of the evidence. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504; *Houchins v. Cocci* (1963), 43 Ill. App. 2d 433, 434, 193 N.E.2d 597, 598, citing *Ryan v. Goldblatt Bros.*,

*Inc.* (1960), 24 Ill. App. 2d 239, 242, 164 N.E.2d 280, 282.) In the instant case, plaintiff made out a case establishing the sheriff's negligence, and there was no evidence contradicting or tending to contradict the plaintiff's evidence. It then was not only the power but also the duty of the court to direct a verdict for plaintiff. *Sughero v. Jewel Tea Co.* (1967), 37 Ill. 2d 240, 226 N.E.2d 28; *Calvetti v. Seipp* (1967) 37 Ill. 2d 596, 227 N.E.2d 758.

Plaintiff's evidence demonstrated that he was in custody as an inmate in the jail, that it was as a person in need of mental observation who was taken to the jail for a temporary three-day period until he could be taken to the Elgin State Hospital, that the plaintiff was physically and mentally handicapped and was injured at the time he was taken into custody. Consequently, the jailers were charged with the duty of providing care for plaintiff while he was incarcerated and unable to protect his own health and safety. Plaintiff's evidence also established that the jailers carelessly and negligently operated the jail, shown by the following facts introduced in evidence at trial by the plaintiff:

> (a) the jail failed to segregate violent prisoners from the plaintiff, who was placed in the same cell block with much younger men who were aggressive troublemakers;
> (b) there was no periodic inspection of the jail;
> (c) when plaintiff was first set upon by other inmates in the morning hours of August 16, 1969, he repeatedly cried for help, but no jail employee responded to his cries;
> (d) the jailers failed to supervise the cell block day room where plaintiff was forced to mingle with numerous other prisoners for most of the day;
> (e) despite the fact that a radio-intercom system was available to monitor the cell blocks, the system was used almost exclusively to pipe music to cell blocks, which music prevented guards from hearing the plaintiff's screams and cries for help.

In sum, plaintiff made out a case establishing that the sheriff was guilty of negligence, and defendant offered no evidence which contradicted plaintiff's case. The trial court, therefore, properly directed a verdict for plaintiff on the count charging defendant with ordinary negligence.

■■ However, I agree with defendant's argument that the issue of defendant's liability on the count alleging willful and wanton misconduct should not have been submitted to the jury. To constitute "willful and wanton" misconduct, the acts or omissions of the defendants must not only be negligent but must also exhibit a conscious disregard for the safety of others. (*Turner v. Commonwealth Edison Co.* (1976), 35 Ill. App. 3d 331, 337, 341 N.E.2d 488, 493; see also *Schneiderman v. Interstate*

*Transit Lines, Inc.* (1946), 394 Ill. 569, 583, 69 N.E.2d 293, 300 (automobile accident); *Myers v. Krajefska* (1956), 8 Ill. 2d 322, 328-29, 134 N.E.2d 277, 280 (automobile accident).) It is clear from the evidence introduced at trial that the jury could properly infer that the jailers themselves were guilty of "willful and wanton" misconduct. After plaintiff was beaten in the cell by other inmates, he was removed from the cell block by a jailer to be taken to a bail bond hearing. He was later returned to the same cell, even though it was evident to the jailer who transported him that "something was wrong" and plaintiff looked like he had been beaten. Under such circumstances, the jailers were aware or should have been aware that plaintiff's safety was endangered, and by returning him to the same cell, the jury could quite reasonably infer that the jailers consciously disregarded the safety of plaintiff.

However, it is settled that, where an employer's liability is predicated solely upon a vicarious liability theory, the employer is not liable for punitive damages resulting from the willful and wanton misconduct of the employee unless the employer approved, authorized, or ratified the act. In *Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, 330 N.E.2d 509, our supreme court indicated its approval of the rule set forth in the Restatement (Second) of Agency §217C (1958), which requires proof of "complicity" by the employer in the employee's tort before punitive damages may be imposed. Section 217C states:

> "Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if:
>
> (a) the principal authorized the doing and the manner of the act, or
>
> (b) the agent was unfit and the principal was reckless in employing him, or
>
> (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or
>
> (d) the principal or a managerial agent of the principal ratified or approved the act."

The rule set forth in the Restatement has been cited with approval in three cases decided subsequent to *Mattyasovszky.* (*E.g., Sherman v. Field Clinic* (1979), 74 Ill. App. 3d 21, 392 N.E.2d 154; *Oakview New Lenox School District No. 122 v. Ford Motor Co.* (1978), 61 Ill. App. 3d 194, 378 N.E.2d 544; *Tolle v. Interstate Systems Truck Lines, Inc.* (1976), 42 Ill. App. 3d 771, 356 N.E.2d 625.) I am of the opinion that the views expressed in the Restatement and the reasoning of the above cited cases are sound, and I accordingly adopt the tests set forth therein.

In applying these principles to the instant case, there is a total failure of proof that the county, as the principal, ratified, condoned, authorized, or approved of the acts of the jailers. As a consequence, the jury's verdict

on the count alleging willful and wanton misconduct on the part of the county is clearly against the manifest weight of the evidence and must be reversed.[2]

Finally, we agree with plaintiff's argument that the jury's verdict awarding plaintiff $175,000 in compensatory damages is not excessive. Plaintiff endured a vicious and brutal assault, and the evidence adduced at trial pertaining to the extent and nature of plaintiff's injuries showed that they were serious in nature and of permanent duration. The amount of damages sustained by a plaintiff is primarily a factual question for the jury to determine, and where there is sufficient evidence to support the jury's findings, this court will not disturb its verdict.

Accordingly, the judgment entered on the verdict of the jury for the count alleging willful and wanton misconduct is reversed; the balance of the judgment is affirmed.

Affirmed in part, reversed in part.

Mr. PRESIDING JUSTICE SEIDENFELD, specially concurring:

I concur in the result but disagree with some of the reasoning of Justice Lindberg's decision. I do not think that the legislature in enacting section 9—103 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1977, ch. 85, par. 1—101 *et seq.*) intended to abolish the common law rule that a local government is not liable for punitive damages.

The common law rule is codified in section 2—102 of the Act, which states:

> "Notwithstanding any other provision of law, a local public entity is not liable to pay punitive or exemplary damages in any action brought directly against it by the injured party." (Ill. Rev. Stat. 1977, ch. 85, par. 2—102.)

Justice Lindberg feels that this section is superseded by section 9—103, which has been interpreted to mean that a local public entity waives the defenses and immunities set forth in the Act when it purchases liability insurance. (See *Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 173-74.) Since section 2—102 is an immunity provided in the Act, the argument goes, it is waived.

But the cases so holding have dealt with other sections of articles II through VI of the Act, and not with the interaction of sections 2—102 and 9—103. All of the sections which grant defenses or immunities begin

---

[2] In view of our disposition of this issue, we need not determine whether the trial court erred in refusing to permit defendant to present certain evidence in mitigation of punitive damages.

simply "A local public entity is not liable * * *" or "A public employee is not liable * * *" or "Neither a local public entity nor a public employee is liable * * *." None have the prefatory "notwithstanding any other provision of law." Justice Lindberg interprets this section to exclude the provisions of the Act itself. But I would give the language its plain meaning. Section 9—103 is a provision of law. Therefore, it is superseded by section 2—102. This interpretation is supported by the definition of law in section 1—205, which includes not only enactments but also case law. This comprehensive definition clearly indicates that the legislature intended a local government to remain immune from liability for punitive damages in all circumstances.

This interpretation is consistent with the long-established public policy that public entities are not liable for punitive damages. (See *City of Chicago v. Langlass* (1869), 52 Ill. 256, 259; *George v. Chicago Transit Authority* (1978), 58 Ill. App. 3d 692.) *George* held that the CTA, a municipal corporation, is not liable for punitive damages. This immunity was based not upon the Tort Immunity Act, which the court held inapplicable, but upon the "long standing rule" that, in the absence of a statute specifically authorizing such recovery, the municipal corporations are not liable for punitive damages. It is illogical to grant immunity to those municipal corporations not covered by the Act but to deny it to those covered. And it is illogical to assume that the legislature intended to overturn this rule when it permitted municipal corporations to obtain liability insurance.

Finally, this interpretation imposes liability for punitive damages only when money will not come out of the pocket of the governmental unit. If the damages are greater than the policy limits, the unit does not have to pay the surplus. If the unit can no longer obtain liability coverage because of a large punitive damage award, the unit will never again be liable for punitive damages. It is true that this approach eliminates one of the traditional objections to punitive damages from local governmental entities: that they are an unjust burden on innocent taxpayers which do not directly punish the wrongdoers and have little deterrent effect. But it remains inconsistent with the purpose of imposing punitive damages. The purpose of such damages is to punish an offender and to deter others from similar unacceptable conduct. (*Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, 35; Prosser, Torts §2, at 9 (4th Ed. 1971).) Clearly this purpose is not furthered when the offender is not punished because his insurance company will pay the cost, nor is he deterred, for if he loses insurance protection he will be immune from the cost of his further misconduct. There is no reason to permit punitive damages against local governmental entities when insurance companies will bear the cost. See *Hartford Accident & Indemnity Co. v. Village of Hempstead* (1979), 48

N.Y.2d 218, 422 N.Y.S.2d 47, 397 N.E.2d 737; *Northwestern National Casualty Co. v. McNulty* (5th Cir. 1962), 307 F.2d 432.

For the above reasons, I would hold that section 2—102 grants immunity to local public entities from liability for punitive damages regardless of whether they have purchased liability insurance.

Mr. JUSTICE WOODWARD, dissenting:

I respectfully dissent from the result reached by my colleagues in this case. The issues in this case bring into sharp focus the status of a county sheriff in the State of Illinois; an essential link in plaintiff's case under both counts of his complaint was the establishment of an agency relationship between the defendant county as principal and the Kane County sheriff and/or the sheriff's jailors as agents of the County of Kane. The defendant originally admitted by its answer that it owned, operated, controlled and maintained the Kane County jail through its officers, agents and employees. After jury selection began but before opening statements were made, the county moved to dismiss the action, contending that the suit should have been brought against the sheriff of Kane County and/or the jailors; this motion was denied. Then the defendant county sought leave to amend its answer to deny the agency relationship between the county, as principal, and the sheriff and/or the jailors as the agents of the county; this motion was also denied by the trial judge, who, in his discretion, determined that the motion came too late. Counsel for the county contended that, in spite of the admission of agency as contained in the answer, as a matter of law such a relationship could not exist in this case. Counsel for the plaintiff, in response, asserted that the principle of *respondeat superior* applied; the trial judge then stated that, depending upon the outcome of the case, each party would have an opportunity to present the question on appeal.

Plaintiff's judgments under both counts I and II are predicated on the principle of *respondeat superior*. The threshold issue presented by this appeal is whether a county is liable under the theory of *respondeat superior* for the acts and/or omissions of the county sheriff and/or his jailors in the administration, operation and conduct of the county jail. Whether or not this issue was properly decided by the trial court requires an examination of the legal relationship between the county sheriff and the County of Kane (County Board) in reference to the maintenance and conduct of the county jail.

The powers and duty of the county sheriff in respect to the jail and the inmates therein were specified in 1874 when the following provisions (Ill. Rev. Stat. 1977, ch. 75, par. 2) were enacted:

"The sheriff of each county in this State shall be the warden of

the jail of the county, and have the custody of all prisoners in such jail * * *."

Section 14 of "An Act to revise the law in relation to sheriffs" (Ill. Rev. Stat. 1977, ch. 125, par. 14) further provides as follows:

"He [sheriff] shall have the custody and care of the court house and jail of his county, except as is otherwise provided."

The foregoing provisions are codifications of the common law duties and powers of the sheriff in respect to the operation and maintenance of the county jail and the care of the prisoners therein. Our supreme court has held that only the sheriff may hire such persons as are necessary for the care and maintenance of the courthouse and jail. (*People ex rel. Walsh v. Board of Commissioners* (1947), 397 Ill. 293.) The supreme court has also held that the county board has no right to dismiss or hire a janitor for the courthouse or jail. *County of McDonough v. Thomas* (1899), 84 Ill. App. 408; *County of Edgar v. Sanders* (1899), 86 Ill. App. 505.

The sheriff's right to have the sole custody and care of the jail and the inmates therein is further confirmed by section 25.34 of "An Act to revise the law in relation to counties" (Ill. Rev. Stat. 1977, ch. 34, par. 429.18), enacted by the legislature subsequent to the filing of this suit; that section provides as follows:

"No county board may alter the duties, powers and functions of county officers that are specifically imposed by law. A county board may alter any other duties, powers or functions or impose additional duties, powers, and functions upon county officers. In the event of a conflict State law prevails over county ordinance."

The foregoing provision merely reaffirms the independence from the control of the county board of those county officers who derive their authority from statute or common law. Since the custody and care of the county jail is specifically granted to the sheriff by law, the county board cannot alter or change such power, and there is no evidence in this case that the Kane County Board so acted.

The majority opinion reasons that the sheriff's duties are intended to benefit the county and therefore the county must be liable for the acts and omissions of the sheriff on a *respondeat superior* theory. It is stated that since a corporation can act only through its officers, agents and employees, it should be liable for their negligence. Such a statement is correct as applied to most corporations as the board of directors has complete authority and power to hire its officers, agents and employees and also it has power to fire them if the directions and orders of the board of directors are not followed. This, however, is not the relationship in Illinois between the county sheriff and the county board; the county board does not select and cannot discharge the sheriff. The quotation in the majority

opinion from *County of Cook v. City of Chicago* (1924), 311 Ill. 234, 239, confirms this position in stating:

> "*Quasi* municipal corporations, such as counties and townships, are at most but local organizations, * * * and they are invested with but few characteristics of corporate existence."

The statutory provisions construed by our courts in the cases previously cited reveal that the county board has no authority or control over the operation, staffing and administration of the county jail; the county jail is run by the sheriff.

The majority opinion also points out numerous statutory provisions specifying responsibilities on the part of the county board in connection with the maintenance of the courthouse and jail; these provisions relate principally to providing funds for the maintenance and operation of the county jail and keeping the inmates. The county board has a similar obligation as to the courthouse. However, it does not follow that the county board has authority to operate or control either the courts or the jail as it would if a principal-agent relationship existed.

There have been two cases in Illinois which involve the administration, operation and conduct of the county jail; in each case the county sheriff was the defendant; in each case the county board was not sued; hence they are not similar to this case. However, there are some statements which provide some guidance. The first case is *Bush v. Babb* (1959), 23 Ill. App. 2d 285. The plaintiff there was an inmate of the Cook County jail, who was treated negligently by the jailor while in the county jail and by reason of such treatment contracted tuberculosis. On appeal, the court dismissed the plaintiff's suit with the following comment in reference to the sheriff's liability:

> "His functions, therefore, are quasi-judicial, * * * and carry with them the immunity from liability for mere negligent omission to provide proper and adequate medical care for Carl Bush. The sheriff's duty is to the public, under the aspect of the state, and not to the individuals who are the inmates in the county jail. If he fails in his duty, he may be subjected to the statutory penalty, section 23, but not to a private suit." (23 Ill. App. 2d 285, 290.)

In *Kelly v. Ogilvie* (1965), 64 Ill. App. 2d 144, the plaintiff sued for personal injuries sustained when he was attacked in the jail by another inmate; the defendants were the sheriff of Cook County, the warden of the Cook County jail (who was appointed by the sheriff) and a jailor. The sheriff was charged with negligence on the principle of *respondeat superior* and also on the basis of negligence in that he maintained a "barn boss" system in the conduct of the jail, which allegedly resulted in the attack on the plaintiff. At page 147 the court stated as follows:

> "Ogilvie [sheriff] and Johnson [warden] are not accountable for

Olson's [jailor] or Wilson's [Jailor] alleged wrongdoing upon any rule of agency or respondeat superior. According to long standing rules, a public official having the direction of a subordinate public employee is not thereby responsible for the latter's conduct. *It is the underlying public body which is the principal or master.* [Citations.] In the instant case the public entity, the county, is not a party and its immunity or liability by virtue of express statutory provisions or the decisions construing them need not be considered." (Emphasis added.)

The part of the above quotation in italics would appear to support the theory of *respondeat superior*. However, the case cited as authority involved the responsibility of the State Director of Insurance, not a sheriff; further, the statement is dicta, as the county was not a party in that lawsuit. Also, the statement is at odds with the relationship between the sheriff and county board imposed by the statutes discussed initially, and no case has cited *Kelly* as authority for this proposition. The *Kelly* court then determined that the sheriff and the county jail warden were not liable for alleged negligence in the administration of the jail and stated as follows:

"The choice of systems of prison administration involves the exercise of discretion and comes within the doctrine of quasi-judicial immunity. [Citations.] This doctrine rests on the principle that the public decision maker, like the judge, ought to be shielded from personal liability or other factors extraneous to a judgment based on his best perception of public needs. * * *

* * * While the purpose of quasi-judicial immunity admittedly is to insulate decision making from extraneous factors, personal financial liability is only one of those factors. Equally important are public liability and an officer's legitimate fear of defending his many policy choices in court. These are not rendered obsolete by indemnification and insurance, and the reason for quasi-judicial immunity remains." *Kelly*, at 147-48.

Both *Bush* and *Kelly* raise the interesting theory of quasi-judicial immunity as to the sheriff in connection with the operation of the county jail. On grounds of public policy, each case clearly holds that the sheriff cannot be held liable for negligence in running the jail. Therefore, it is not logical to impose liability on the county as it has no control over his conduct. Assuming, however, for the purposes of argument, that the sheriff is an employee or agent of the county and that he is immune from liability by virtue of the doctrine of quasi-judicial immunity, then section 2—109 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1977, ch. 85, par. 2—109) would relieve the county of liability. That section provides:

"A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."

On the basis of either of the two theories set forth above, the county should not be held liable in this case. First, because *respondeat superior* does not apply or, in the alternative, because the sheriff is not liable on the basis of quasi-judicial immunity, and therefore the county is relieved of liability by section 2—109, noted above. A further practical consideration supports the foregoing conclusion, namely, if the defendant had been permitted to amend his answer to deny the agency of the sheriff, then theoretically a resulting question of fact would arise to be passed upon by a jury. No doubt the county would then contend that the sheriff was an independent contractor and therefore not an employee as defined in section 1—202 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1977, ch. 85, par. 1—202). In such event it is submitted that the court would have been required to instruct the jury that no agency existed as a matter of law in this case.

This is a difficult case and also one of first impression in Illinois. There is no question that the plaintiff was miserably treated in the Kane County jail. The status and relationship between the county sheriff and the county is involved and must be properly interpreted under existing law. If this is not satisfactory, the legislature should act to change that relationship. An incorrect principle of law has been applied. The trial court erred in denying defendant's motion to dismiss this cause. I respectfully submit that the judgment on count I and count II should be reversed, and judgment should be entered for the defendant in this court on both counts.